PERCY LUNG ET AL., APPELLEES, v. HARRY FRANDSEN ET AL., APPELLANTS.

51 N. W. 2d 255

Filed February 1, 1952. No. 33109.

*William H. Meier,* for appellants.

*Bracken & Tucker,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a habeas corpus action originally commenced in the county court of Kearney County by Percy Lung and Carrie Lung against Harry Frandsen and Grace Frandsen for the purpose of obtaining the custody of Gloria Dee Lung, minor daughter of the Lungs. The county court, after hearing, denied the Lungs custody of their child. The Lungs then appealed to the district court for Kearney County. The district court, after

trial, directed that the custody of the child be delivered to the Lungs. From this decree, their motion for new trial having been overruled, the Frandsens appealed to this court.

Of this class of actions, we have said: " 'In general, the writ of habeas corpus has been extended to, and may be used in, controversies regarding the custody of infants. Such proceedings are governed by considerations of expediency and equity, and should not be bound by technical rules of practice.' 39 C. J. S., Habeas Corpus, § 41, p. 568." Hanson v. Hanson, 150 Neb. 337, 34 N. W. 2d 388. See, also, In re Application of Reed, 152 Neb. 819, 43 N. W. 2d 161.

Section 38-107, R. S. 1943, provides, insofar as here material, that: "The father and mother are the natural guardians of their minor children and are equally entitled to their custody, * * * being themselves competent to transact their own business and not otherwise unsuitable."

The principles applicable to the question herein involved, which is one of fact, are as follows:

"Parents have a natural right to the custody of their children unless they are affirmatively shown to be unfit. See Voboril v. Voboril, 115 Neb. 615, 214 N. W. 254." Hanson v. Hanson, *supra*.

"The courts may not properly deprive the parents of the custody of their children unless it be shown that such parents are unfit to perform the duties imposed by the relation or that they have forfeited that right." Boucher v. Dittmer, 151 Neb. 580, 38 N. W. 2d 401.

What this court said in Norval v. Zinsmaster, 57 Neb. 158, 77 N. W. 373, 73 Am. S. R. 500, is as applicable today as it was then. Therein this court said: "We are aware that this court has several times asserted that in such controversies as the present the order should be made with sole reference to the best interests of the child. But this has been broad language applied to special cases. The court has never deprived a parent of the

custody of a child merely because on financial or other grounds a stranger might better provide. The statute declares and nature demands that the right shall be in the parent, unless the parent be affirmatively unfit. The statute does not make the judges the guardians of all the children in the state, with power to take them from their parents, so long as the latter discharge their duties to the best of their ability, and give them to strangers because such strangers may be better able to provide what is already well provided."

In Norval v. Zinsmaster, *supra*, the court goes on to say: "The right of the parent is not lightly to be set aside, and it should not be done where unfitness is not affirmatively shown, or a forfeiture clearly established." See, also, Terry v. Johnson, 73 Neb. 653, 103 N. W. 319; State ex rel. Britton v. Bryant, 95 Neb. 129, 145 N. W. 266.

The trial was held on June 12 and 13, 1951, and the data, such as ages of the parties, etc., will be with reference thereto unless otherwise shown in the opinion.

Percy Lung and Carrie Lung are husband and wife, being respectively 63 and 46 years of age. Their family consists of themselves and six children. The children are a daughter Charlotte, age 23 years; a son Percy, Jr., age 19 or 20 years; a son Harry, age 13 years; a son Paul, age 8 years; a son James, age 6 years; and a daughter Gloria Dee, age 2 years. Gloria was born on February 10, 1949.

During the time herein involved the family either lived in a tenant house located on the farm of Fay Rogers near Minden in Kearney County, Nebraska, where Mr. Lung worked as a hired man for Roy Francisco, who operated it, or in the farm home on a farm in Jewell County, Kansas, where he worked as a hired man for W. H. Hutt. The latter farm is located about two miles south and a quarter mile east of Superior, Nebraska. Just when the Lungs moved to the latter farm is not too clearly shown by the record but apparently it was sometime in April 1951.

The tenant house occupied by the Lungs on the farm near Minden is a small one-story building having four rooms, each about 10 ft. by 12 ft. Two of these rooms were used as bedrooms, one as a living room, and the other as a kitchen. It has no closets or storage space. The house is not modern and it was necessary to carry water about a block and a half. It is apparent that the conditions under which they lived in this home presented difficulties not common to a modern home and required a good deal of extra work. Naturally the standards of good housekeeping are affected by the facilities available in the home.

After Gloria was born the Lung family suffered an epidemic of sickness. Just what caused this cannot be positively stated. It may have been due to a poorly ventilated home, poor heating conditions, or many other causes. During this epidemic Gloria had measles and whooping cough, and Mrs. Lung suffered from a severe leg infection and gall bladder trouble. The mother's condition affected her ability to take care of the home and her family and, because thereof, the conditions existing in the home during the year 1949 left much to be desired.

It was finally decided that Mrs. Lung should go to a hospital for surgery to correct her gall bladder condition. It was thought best, by those in charge from the county assistance office, to temporarily take the three youngest children out of the home while the mother would be away. This Mrs. Lung agreed to. As a result, such arrangements were made by the county assistance officer. The two younger boys, James and Paul, were, on January 4, 1950, taken to a children's home in Holdrege, Nebraska, and the baby, Gloria, was on the same day taken to the home of Harry and Grace Frandsen. The Frandsens are a farm couple who live on a farm some six or seven miles from Minden. The older boy was left at home and stayed with the father.

When Gloria was taken to the Frandsen home she

was in very poor physical condition and possibly in poor health. Just what this was due to cannot be positively stated. It may have been due to the sicknesses which she had had, it may have been due to her nursing while her mother was sick, it may have been due to lack of care and food resulting from her mother's inability to properly take care of the family during the time she was sick, or it may have been due to a combination of all three.

The mother went to the hospital and came through the operation successfully. However, the length of time required for her recovery was longer than had been anticipated. At the time Gloria was taken to the Frandsen home it had been arranged to leave her there about two months. However, when the doctor in charge of Mrs. Lung would not let her return home unless it was understood she was not to have the care of the children for six months, this time was extended accordingly. James and Paul returned home either in the latter part of July or forepart of August 1950. When request was made in August 1950 for Gloria's return the Frandsens would not comply therewith and she has never been returned to her parents.

After Mrs. Lung returned from the hospital her condition improved and the general condition of the home improved. This is also true of the house they now occupy in Kansas which is a seven-room home with both water and electricity available.

Mr. Lung, while working in a field of labor that does not pay the highest wages, is a man of good habits and a steady worker fully capable of holding a job in his line of work. He uses his income to support his family. Mrs. Lung is devoted to her family. There is nothing in the record that disqualifies either of them from having and raising their own children, except the fact that they are in a low income bracket and consequently have not always had available all the facilities we commonly associate with a modern home.

We do not, in any way, want to reflect on the Frandsens and their home. They appear to be people of the finest type who have and would give Gloria a good home. The record shows Gloria quickly responded to the treatment she received when she entered their home and she now appears to be happy there. But these facts are not here controlling as to the rights of the Lungs.

Without going into further detail we have come to the conclusion that the record does not show the Lungs to be unfit to perform the duties imposed upon them as parents. In this respect we have not overlooked the difficulties of Charlotte's husband nor the difficulties of Percy, Jr., which ultimately caused him to be sent to the men's reformatory. These are unfortunate incidents in the lives of these two young people. While the record of Percy, Jr., does reflect somewhat on the parents, we do not find it of such character that it should take from the Lungs the right to have and raise their other children, including Gloria.

It is significant to note that at no time did those in charge of the county assistance office of Kearney County take any action to permanently remove any of the four younger Lung children from the custody of their parents. The evidence shows the three boys (Harry, Paul, and James) are and have at all times been well taken care of by their parents, considering all the circumstances affecting the Lung household at the time.

We have come to the conclusion that since the Lungs have done nothing to forfeit their right to their daughter and since the evidence fails to show them unfit to be parents, that the custody of their daughter should be given to them and that Gloria should be returned by the Frandsens to the Lungs. We therefore affirm the decree of the trial court to that effect.

AFFIRMED.