Docket Nos. 102694, 103405 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

EDWARD HENNINGS, Appellant, v. NEDRA CHANDLER, Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. VINCENT PATTERSON, Appellant.

*Opinion filed May 22, 2008.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

These consolidated appeals present the question of whether a trial court has the authority to *sua sponte* deny a state *habeas corpus* complaint without notice to the plaintiff, leave to amend the complaint, or a hearing. We conclude that a trial court has such authority, and therefore affirm the appellate court in both cases.

## BACKGROUND

Contained within the Code of Civil Procedure (Code or Act) (735 ILCS 5/5–101 *et seq.* (West 2002)) is article X, which codifies the laws of this state governing complaints for *habeas corpus* relief (735 ILCS 5/10–101 *et seq.* (West 2002)). Article X includes specific

procedural provisions regulating *habeas corpus* actions, and these sections control over the general procedural provisions contained in article II, known as the Civil Practice Law (735 ILCS 5/1–101(b), 2–101 *et seq.* (West 2002)). 735 ILCS 5/1–108(a) (West 2002) ("The provisions of Article II of this Act apply to all proceedings covered by Articles III through XIX of this Act except as otherwise provided in each of the Articles III through XIX, respectively"). Both appellants herein, Edward Hennings and Vincent Patterson, filed complaints for *habeas corpus* relief under article X. We turn to the specifics of each case.

### No. 102694–Edward Hennings

On August 8, 2001, Edward Hennings was charged with burglary, a Class 2 felony (720 ILCS 5/19–1(a), (b) (West 2000)), and criminal damage to property, a Class A misdemeanor (720 ILCS 5/21–1(1)(a), (2) (West 2000)) in the circuit court of Will County. The indictment alleged that Hennings had two previous Class 2 felony convictions in Will County. On September 18, 2001, Hennings entered into a fully negotiated plea agreement whereby he agreed to plead guilty to burglary in exchange for the State entering a *nolle prosequi* on the criminal damage to property count and recommending a sentence of 12 years' imprisonment for the burglary offense. The trial court accepted the plea agreement and sentenced Hennings as a Class X offender to 12 years' imprisonment.

On November 22, 2004, Hennings filed a *pro se* "Petition for Habeas Corpus Relief" in the circuit court, alleging, *inter alia*, that his 12-year sentence exceeded the maximum nonextended term of 7 years' imprisonment for a Class 2 felony, that the sentencing court exceeded its jurisdiction in sentencing him to an "enhanced sentence of 12 years imprisonment pursuant to 730 ILCS 5/5–5–3(c)(8)," and that the time for which he could legally be confined, seven years, had expired. The record shows that on December 9, 2004, the trial court reported that Hennings had filed "a written petition of habeas corpus," and that the court would "make initial review of it and set the matter over for status on my review of the petition." The following day, December 10, 2004, the court held further proceedings on the *habeas corpus* complaint. After summarizing Hennings' allegations, the court stated that it had reviewed the mittimus, which

showed a "Class X mandatory" sentence was imposed, noting the language of section 5–5–3(c)(8), which required sentencing Hennings as a Class X offender due to his criminal history, and concluded:

> "The Class X sentencing category is between six and 30 years in the Department of Corrections. He received a sentence of 12 years in the Department of Corrections, which is not beyond the appropriate sentence for the crime committed, given his criminal history. So, the petition for habeas corpus relief is denied."

Hennings appealed, arguing the trial court lacked statutory authority to "summarily dismiss"[1] his complaint for *habeas corpus* relief. No. 3–05–0016 (unpublished order under Supreme Court Rule 23). The appellate court disagreed, citing section 10–106 of the Act, and holding that because it was apparent from the face of the *habeas corpus* complaint and the record that Hennings was not entitled to relief, the trial court properly dismissed the complaint. Hennings' petition for leave to appeal was granted by this court. 210 Ill. 2d R. 315(a).


### No. 103405–Vincent Patterson

Following a 1983 jury trial in the circuit court of Cook County, Vincent Patterson was convicted of two counts of murder and one count of armed robbery. On August 4, 1983, Patterson was sentenced to natural life imprisonment and a concurrent 30-year term for armed robbery. The record shows that, on direct appeal, the appellate court vacated one murder conviction, but otherwise affirmed Patterson's

---

[1] In *People v. Vincent*, 226 Ill. 2d 1, 6, 10-11 (2007), this court recently noted that use of the term "summary dismissal" is borrowed from the Post-Conviction Hearing Act and has no application to section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2002)), an entirely different form of statutory collateral relief that does not provide for summary dismissals. Thus, where article X, governing *habeas corpus* complaints, also provides a form of statutory collateral relief under the Code of Civil Procedure, we refer to the circuit courts' actions herein as entering judgment *sua sponte* by denying relief on the complaints. See *Vincent*, 226 Ill. 2d at 11.

convictions and sentences. No. 1–83–1877 (1985) (unpublished order under Supreme Court Rule 23).

On October 14, 2003, Patterson filed a *pro se* "Petition for Writ Habeas Corpus" in the circuit court, alleging an *ex post facto* violation in that certain statutory aggravating factors used to impose an "extended-term" for murder were not in effect at the time he was charged with the offense in 1981. Patterson's *habeas corpus* complaint further alleged that he had "served out the maximum sentence allowed by law under the statutory provision of 1981 when *** the penalty was 20 to 40 years for 'Murder.' " The complaint concluded: "WHEREFOER, [*sic*] Petitioner VINCENT PATTERSON, Prays that a Writ of Habeas Corpus issue [to] bring Petitioner immediately *** to open court pursuant to 735 ILCS 5/10–114, at a designated time and date to plead such valid and meritorious argument in view that Petitioner is now entitle [*sic*] to 'Immediate Release' From Prison." On October 17, 2003, the trial court denied the complaint *sua sponte*, stating: "Vincent Patterson, petition for writ of hab[ea]s corpus and appointment of counsel denied."

Patterson appealed, contending, as did Hennings, that the circuit court did not have statutory authority to deny his *habeas corpus* complaint and, further, that due process entitled him to notice and a hearing prior to any disposition of the complaint. The appellate court affirmed, first noting that "the law in this district is unsettled as to whether the summary dismissal procedure is restricted solely to stage one postconviction petitions where the procedure is explicitly authorized by statute," but holding that even if it is unavailable, "the erroneous deployment of the summary dismissal procedure is still subject to harmless error analysis." No. 1–04–0077 (unpublished order under Supreme Court Rule 23). Because Patterson "[did] not even attempt to defend the merits of his underlying bases for seeking *habeas corpus* relief," the panel concluded his *habeas corpus* action was "doomed to failure" and affirmed the trial court's judgment denying the complaint. On September 26, 2007, we granted Patterson's petition for leave to appeal (210 Ill. 2d R. 315(a)), and consolidated these cases.

ANALYSIS

In this court, neither appellant argues the merits of his respective *habeas corpus* complaint. Rather, appellants contend only that the trial courts that dismissed their complaints "exceeded their statutory authority by summarily dismissing the petitions *sua sponte* without notice to the petitioners or leave to amend," and that such proceedings should be governed by the rules applicable to civil proceedings under the Act. Appellees[2] respond that section 10–106 of the Code (735 ILCS 5/10–106 (West 2002)) provides for initial review of a *habeas corpus* complaint and requires that the circuit court deny the complaint *sua sponte* if it fails to state a claim entitling plaintiff to relief. Appellees further argue that, as this court recently discussed in *People v. Vincent*, 226 Ill. 2d 1 (2007), *sua sponte* denial of patently nonmeritorious complaints is permitted under the Act. The issue before us is thus one of statutory construction, which we review *de novo*. See *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 7 (2007); *In re Detention of Lieberman*, 201 Ill. 2d 300, 307 (2002); see also *In re Keri B.*, 327 Ill. App. 3d 1068, 1070 (2000) (*de novo* review applied to question of whether a trial court's order falls within the authority the legislature has granted).

This court recently set forth the well-settled principles of statutory construction in *Orlak*, stating:

> "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] That intent is best gleaned from the words of the statute itself, and

---

[2]Appellees are the defendants in these *habeas corpus* actions, the persons in whose custody or under whose restraint the appellant prisoners reside. See 735 ILCS 5/10–107 (West 2002); see also *People ex rel. Ross v. Ragen*, 391 Ill. 419, 422-23 (1945) (a *habeas corpus* proceeding is a civil action, separate and distinct from the underlying criminal proceeding, and is brought to enforce a civil right of personal liberty, which the plaintiff claims, as against those who are holding him in custody, under the criminal process). Patterson correctly named his custodian Stephen Mote, then warden of Pontiac Correctional Center, as the defendant in his *habeas corpus* complaint. On appeal, the caption was changed to "*People v. Patterson*." Thus, the proper defendant-appellee in Patterson's case is his current custodian.

where the statutory language is clear and unambiguous, it must be given effect. [Citation.] A court should interpret a statute, where possible, according to the plain and ordinary meaning of the language used. [Citation.] In determining the plain meaning of a statute's terms, we consider the statute in its entirety, keeping in mind the subject it addresses, and the apparent intent of the legislature in enacting the statute. [Citation.]" *Orlak*, 228 Ill. 2d at 8.

We also afford the statutory language the fullest, rather than narrowest, possible meaning to which it is susceptible. *Lieberman*, 201 Ill. 2d at 308.

"*Habeas corpus*," which literally translated from Latin means " 'that you have the body,' " is a writ employed to bring a person before a court, "most frequently to ensure that the party's imprisonment or detention is not illegal (*habeas corpus ad subjiciendum*)." Black's Law Dictionary 728 (8th ed. 2004). In Illinois, article X provides a comprehensive procedural framework that governs orders[3] of *habeas corpus*. 735 ILCS 5/10–101 *et seq.* (West 2002). Thus, determining whether section 10–106 permits a trial court to conduct an initial review of the sufficiency of a *habeas corpus* complaint necessarily involves an examination of other sections within article X. See *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 238 (2004) (words and phrases of a statutory section must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation).

Section 10–102 provides: "Every person imprisoned or otherwise restrained of his or her liberty, except as herein otherwise provided, *may apply for habeas corpus* in the manner provided in Article X of this Act, *to obtain relief from such imprisonment or restraint, if it proved to be unlawful*." (Emphases added.) 735 ILCS 5/10–102 (West 2002). In other words, a prisoner may apply for an order requiring the person detaining him to produce the body of the prisoner

---

[3]Article X now refers to "orders" of *habeas corpus*, rather than "writs." See 735 ILCS 5/2–1501 (West 2002) ("Writs abolished"); see also, *e.g.*, 735 ILCS 5/10–107 (West 2002) ("Form of orders").

to test the legality of the detention and, "if it proved to be unlawful," "to obtain relief from such imprisonment." Section 10–103 explains to which courts application for the relief shall be made and, *inter alia*, that application "shall be made by complaint signed by the person for whose relief it is intended." 735 ILCS 5/10–103 (West 2002). Section 10–104 provides what the complaint shall state in substance, including: (1) that the person in whose behalf the relief is applied for is imprisoned; (2) "[t]he cause or pretense of the restraint"; and (3) that a copy of any warrant or process by virtue of which the prisoner is restrained be "annexed." 735 ILCS 5/10–104 (West 2002).

With these preliminary provisions in mind, we consider section 10–106, which states, in pertinent part: "Unless it shall appear from the complaint itself, or from the documents thereto annexed, that the party can neither be discharged, admitted to bail nor otherwise relieved, the court shall forthwith award relief by habeas corpus." 735 ILCS 5/10–106 (West 2002). Given that we have found that the plain language of section 10–102 allows a prisoner to apply for an order requiring the person detaining him to produce the body of the prisoner so that the legality of the detention may be determined, it is clear that the "relief by habeas corpus" referred to in section 10–106 is the grant of the order by which the *habeas corpus* complainant, or plaintiff, is brought before the court. Therefore, unless, upon inspection of the complaint and any documents affixed to it, the court can conclude that the plaintiff "*can neither* be discharged, admitted to bail nor otherwise relieved," it shall grant the order for the plaintiff to be brought to court so that such determination may be made. (Emphasis added.) 735 ILCS 5/10–106 (West 2002). The plain language of section 10–106 accordingly requires the trial court to conduct an initial review of the sufficiency of the complaint and to grant an order of *habeas corpus* if the complaint, with its attached documentation, establishes a question as to the legality of the plaintiff's detention or imprisonment. Conversely, if it is clear from a review of the complaint that the plaintiff is not entitled to the relief of *habeas corpus*, the order shall be denied. See 39 Am. Jur. 2d *Habeas Corpus* §166 (1999) (while *habeas corpus* is a writ of right, it will not issue as a matter of course; judicial discretion is exercised in its issuance, and the petition must present facts showing entitlement to the writ; unless it appears from the petition and supporting documents that the

petitioner is not entitled to relief, the court must issue the writ).

The requirements set forth in subsequent sections of article X support this reading of section 10–106. Under section 10–107, if *habeas corpus* relief is allowed by an order of the court, that order shall be directed to the person having custody of the prisoner, in substantially the following form:

> "You are hereby commanded to have the body of C D, imprisoned and detained by you, together with the time and cause of such imprisonment and detention[,] *** before . . . . court of . . . . County (or before E F, judge of, etc.), at, etc., immediately after being served with a certified copy of this order, to be dealt with according to law; and you are to deliver a certified copy of this order with a return thereon of your performance in carrying out this order." 735 ILCS 5/10–107 (West 2002).

Said order shall be served pursuant to section 10–110 and in the manner specified in section 10–111. 735 ILCS 5/10–110, 10–111 (West 2002). It is evident from these sections that the relief available at this point is an order to produce the body of the prisoner before the court–not an order to release the prisoner.

After an order of *habeas corpus* has been entered, the officer or person upon whom the order is served then files a return in accord with section 10–113, stating whether he has the plaintiff in his custody and, if so, "the authority and true cause of such imprisonment or restraint." 735 ILCS 5/10–113(1), (2) (West 2002). If the plaintiff is detained "by virtue of any order, warrant or other written authority, a copy thereof shall be attached to the return." 735 ILCS 5/10–113(3) (West 2002). "Upon the return of an order of habeas corpus, the court shall, without delay, proceed to examine the cause of the imprisonment or restraint." 735 ILCS 5/10–119 (West 2002). It is only then that adversarial proceedings begin.

This court, in construing an early predecessor to section 10–106, instructed:

> "The issuance of the writ upon the filing of the petition is not a mere matter of course. The writ should never issue unless a petition is presented which is in substantial accord and compliance with the provisions of the statute, and which

> shows upon its face that the petitioner is entitled to his discharge." *People ex rel. Stead v. Superior Court*, 234 Ill. 186, 198 (1908).

In *People ex rel. Stead*, this court held that, because it was apparent from the face of the petition for writ of *habeas corpus* that the question raised in it had, as a matter of law, been adjudicated against the plaintiff, it therefore appeared from the petition that he could not be discharged, admitted to bail, or otherwise relieved, "and for that reason, the writ should not have issued." *People ex rel. Stead*, 234 Ill. at 198; see also 39A C.J.S. *Habeas Corpus* §297, at 55 (2003) ("It is generally held that the court, before actually issuing the writ, may determine whether the facts alleged in the petition warrant the discharge of the prisoner").

The procedure detailed above is in accord with that of other states which, in construing similar provisions, have held that *sua sponte* denial of a complaint for order or writ of *habeas corpus* is appropriate where it is apparent that the applicant is not entitled to that relief. See, *e.g.*, *Chari v. Vore*, 91 Ohio St. 3d 323, 327, 744 N.E.2d 763, 768-69 (2001) (where petitioner had not satisfied the pleading requirements for a petition for writ of *habeas corpus*, court of appeals should never have allowed the writ, ordered a return, and held a hearing on the petition; statute prescribes that application is by petition which contains certain information and if the court decides that the petition states a facially valid claim, it must allow the writ; conversely, if the petition states a claim for which *habeas corpus* relief cannot be granted, the court should not allow the writ and should dismiss the petition); *Smith v. State*, 440 So. 2d 1222, 1223-24 (Ala. Crim. App. 1983) (trial court did not err in denying petition for writ of *habeas corpus* that wholly failed to state facts entitling petitioner to issuance of such writ, where statute provides that the judge to whom an application for writ of *habeas corpus* is made must grant the same without delay, unless it appears from the petition itself or from the documents thereto annexed that the person imprisoned or restrained is not entitled to the benefits of the writ; when a petition for writ of *habeas corpus* shows on its face that if all statements of fact contained in the petition were true, the petitioner would not be entitled to the writ, it is not error to deny the petition). A similar procedure applies in federal *habeas corpus* proceedings filed by state

prisoners under 28 U.S.C. §2254 (2000). Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts authorizes a district court to conduct an initial screening of petitions and to dismiss unworthy requests for *habeas corpus* relief. See Rules Governing Section 2254 Cases in the United States District Courts, R. 4; *Small v. Endicott*, 998 F.2d 411, 413, 414 (7th Cir. 1993). "When the face of the petition plus any annexed exhibits plainly show that the petitioner is not entitled to relief, the district court can summarily dispose of the matter without either examining the transcripts and record of the state court proceedings or ordering the state to respond." *Small*, 998 F.2d at 414 (citing Rule 4 and 28 U.S.C. §2243 (1988) (the writ shall be awarded or an order to show cause issued, "unless it appears from the application that the applicant or person detained is not entitled thereto")).

In the matter before us, we agree with appellees that appellants have cited no authority to support their contention that section 10–106 "appears to go to the ultimate question of whether relief should be granted." As has been explained above, when a court orders "relief by habeas corpus" under section 10–106, the court is not thereby granting the plaintiff his release or declaring that his detention is illegal, but merely directing the person having custody to make the return and, "at the same time, bring the body of the party." 735 ILCS 5/10–106, 10–113, 10–114 (West 2002); see *People ex rel. Day v. Lewis*, 376 Ill. 509, 511 (1941). After the return is made, the court, pursuant to the dictates of article X, determines whether an order should be entered either discharging plaintiff, remanding him to custody, or admitting him to bail. See 735 ILCS 5/10–123 through 10–127 (West 2002).

Of particular interest here, section 10–124 sets forth the seven specific instances in which a plaintiff, "in custody by virtue of process from any court legally constituted," may be discharged. 735 ILCS 5/10–124 (West 2002); see also *People v. Gosier*, 205 Ill. 2d 198, 205 (2001); *Barney v. Prisoner Review Board*, 184 Ill. 2d 428, 430 (1998). These seven instances fall into two general categories:

> "[A] writ of *habeas corpus* is available only to obtain the release of a prisoner who has been incarcerated under a judgment of a court which lacked jurisdiction of the subject matter or the person of the petitioner, or where there has been

some occurrence subsequent to the prisoner's conviction which entitled him to release." *Barney*, 184 Ill. 2d at 430.

Thus, in *People ex rel. Haven v. Macieiski*, 38 Ill. 2d 396, 398 (1967), where the *habeas corpus* complaint did not allege that the circuit court lacked jurisdiction, and there was no claim that any event had occurred since the judgment of conviction by which the plaintiff had become entitled to discharge, the trial court's judgment "dismissing the *habeas corpus* petition was not erroneous." Here, neither appellant argues the "relative merit" of the claims set forth in his complaint for *habeas corpus* relief. Therefore, as in *Macieiski*, we find that, where the trial courts herein determined that the appellants' complaints were insufficient on their face to warrant any relief available pursuant to article X, then under the procedures set forth in section 10–106, the trial courts could properly deny *sua sponte* the complaints for order of *habeas corpus*.

Appellants further contend that, as this court has recognized that an application for *habeas corpus* relief is a civil proceeding, "involving *** the enforcement of [the plaintiff's] civil right of personal liberty" (*Ragen*, 391 Ill. at 423), proceedings for *habeas corpus* relief under article X of the Code of Civil Procedure should be governed by the rules applicable to civil proceedings. Appellees argue that *sua sponte* denial of the appellants' complaints was proper, citing our recent decision in *Vincent*. While there are certainly differences in a proceeding for relief from judgment governed by section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2002)), which was involved in *Vincent*, and proceedings under article X following the filing of a complaint for order of *habeas corpus*, our decision in *Vincent* supports our holding herein. In *Vincent*, this court, in answering the question "whether a trial court may dispose of a properly served section 2–1401 petition without benefit of responsive pleadings and without giving the petitioner notice of the impending ruling and the opportunity to address the court prior to the ruling," held that "a trial court 'may dismiss a claim sua sponte *** without notice where the claimant cannot possibly win relief.' " *Vincent*, 226 Ill. 2d at 5, 13, quoting *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).

As initially noted, article X contains specific procedural provisions regulating *habeas corpus* actions, and these sections

control over the general procedural provisions of article II, the Civil Practice Law. See 735 ILCS 5/1–108(a) (West 2002). Thus, while a *habeas corpus* complaint is considered a "civil proceeding" under the Act, the procedures governing such action are specifically provided within article X, rather than the Civil Practice Law, which governs petitions for relief under section 2–1401. However, we have established that, under article X, after the filing of a complaint by the plaintiff, the court shall determine whether, "from the complaint itself, or from the documents thereto annexed," the plaintiff is, or is not, entitled to an order of *habeas corpus*. 735 ILCS 5/10–106 (West 2002). Thus, as in *Vincent*, 226 Ill. 2d at 13, the Act provides the court with authority to *sua sponte* deny a plaintiff's complaint " 'without notice where the claimant cannot possibly win relief.' " Quoting *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).

Additionally, appellants urge this court to follow the appellate court's decision in *People v. Winfrey*, 347 Ill. App. 3d 987, 989 (2004), which held that the "*habeas corpus* statute *** does not authorize the trial court to summarily deny a *habeas corpus* petition." However, the holding in *Winfrey* was based on the reasoning in *People v. Gaines*, 335 Ill. App. 3d 292 (2002), and *People v. Shellstrom*, 345 Ill. App. 3d 175 (2003), *aff'd on other grounds*, 216 Ill. 2d 45 (2005), reasoning which has now been effectively overruled by this court. In *Gaines*, the appellate court held that, under the Code of Civil Procedure, a circuit court commits reversible error by dismissing a section 2–1401 petition without giving the defendant notice and an opportunity to respond to the circuit court's action. However, in *Vincent*, we held that the Code permits a trial court to *sua sponte* enter judgment on the pleadings dismissing a section 2–1401 petition with prejudice, even if no responsive pleading has been filed, and without prior notice of the court's ruling to the petitioner. *Vincent*, 226 Ill. 2d at 9-10, 13; see also *People v. Allen*, 377 Ill. App. 3d 938, 942-43 (2007). Similarly, *Winfrey* relied on *Shellstrom*, 345 Ill. App. 3d at 177, which reversed the "summary dismissal" of a complaint filed pursuant to the *mandamus* statute, holding, *inter alia*, that such dismissal contravened section 2–612(a) of the Code. However, as we have noted, procedural provisions regulating *habeas corpus* actions are found within article X of the

-12-

Act, and these sections control over the general procedural provisions, including section 2–612(a), contained in article II. See 735 ILCS 5/1–108(a) (West 2002). Therefore, as the appellate court's decision in *Gaines* has been abrogated by *Vincent*, and we have found herein that the point for which *Winfrey* relies on *Shellstrom* is inapplicable to *habeas corpus* complaints, the *Winfrey* court's reasoning is contrary to this court's pronouncements, and *Winfrey* is hereby overruled.

Finally, appellants contend this court's reasoning that "adequate procedural safeguards exist to prevent erroneous *sua sponte* terminations [of section 2–1401 petitions]" (*Vincent*, 226 Ill. 2d at 13), does not hold true for plaintiffs who file complaints for an order of *habeas corpus*. The "corrective remedies" of rehearing and appeal noted in *Vincent*, 226 Ill. 2d at 13, are likewise available to plaintiffs whose *habeas corpus* complaints are denied *sua sponte*. Further, in *Vincent*, this court noted that the trial court should allow a litigant the opportunity to amend his section 2–1401 petition in those circumstances when doing so would yield a meritorious claim. *Vincent*, 226 Ill. 2d at 13 & n.3. Article X similarly provides that where the plaintiff has pleaded or established facts which entitle him to relief, but "the plaintiff has sought the wrong remedy, the court shall permit the pleadings to be amended, on just and reasonable terms, and the court shall grant the relief to which the plaintiff is entitled on the amended pleadings or upon the evidence." 735 ILCS 5/10–121 (West 2002). We cannot, therefore, find that *sua sponte* denial of a plaintiff's complaint for *habeas corpus* relief has any potential for preventing full access to the courts to those plaintiffs.

## CONCLUSION

For the reasons expressed above, the judgments of the appellate courts, which affirmed the circuit courts' denials of appellants' complaints for *habeas corpus* relief, are affirmed.

*Appellate court judgments affirmed.*

-13-