# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Parents United for Responsible Education v. Board of Education of the City of Chicago,**
**2011 IL App (1st) 102901**

---

| | |
|---|---|
| Appellate Court Caption | PARENTS UNITED FOR RESPONSIBLE EDUCATION, SOUTH SIDE UNITED LSC FOUNDATION, STEVEN ROSS, VALENCIA RIAS, and JESSICA BENUZZI, Plaintiffs-Appellants, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee (Mose Vines Academy Local School Council, School of Technology Local School Council, School of Entrepreneurship Local School Council, Chicago Westside Branch of the National Association for the Advancement of Colored People, Reverend Charles Walker, LaJoyce Hall, Larissa Bilous, and Darryl Gibson, Plaintiffs). |
| District & No. | First District, Second Division<br>Docket No. 1-10-2901 |
| Filed | July 26, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action challenging defendant board of education's power to designate a school in the City of Chicago a "small school," or to close the school and open an alternative school in its place, without holding local school council elections and ceding governing authority over that school to the local school council, summary judgment was properly entered for defendant based on the finding that section 34-2.4b of the School Code exempted small schools and alternative schools from local school council control under such circumstances. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-04912; the Hon. Stuart Palmer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Elaine K.B. Siegel, of Elaine K.B. Siegel & Associates, P.C., of Chicago, for appellants. |
| | Patrick J. Rocks, William A. Morgan, and Cynthia B. Harris, all of Board of Education of the City of Chicago, Law Department, for appellee. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. Justices Karnezis and Harris concurred in the judgment and opinion. |

## OPINION

¶ 1    In this case of first impression, the issue is whether defendant Board of Education of the City of Chicago may designate a school in the city of Chicago a "small school," or close the school and open an alternative school in its place, without holding local school council (LSC) elections and ceding governing authority over the school to that LSC. The circuit court entered summary judgment on this question in favor of defendant, finding that section 34-2.4-2.4b of the School Code (105 ILCS 5/34-2.4b (West 2008)) exempts small schools and alternative schools in this particular situation from LSC control. We affirm.

¶ 2                                    BACKGROUND
¶ 3    For context, we will begin with only a general legal and factual overview of this case. We will refer to specific factual details from the record as necessary in our analysis.

¶ 4    LSCs are local governmental bodies that consist of up to 13 members who are elected from a school's local community. LSCs have broad authority over an individual school's spending priorities and the selection and retention of its principal, as well as some other school policies such as the dress code. See generally 105 ILCS 5/34-2.3 (West 2008) (enumerating the powers of LSCs). LSCs are designed to operate largely independently, and the overarching goal of the legislature in creating LSCs is to "make the individual local school the essential unit for educational governance and improvement and to establish a

-2-

process for placing the primary responsibility for school governance and improvement in furtherance of [priority] goals in the hands of parents, community residents, teachers, and the school principal at the school level." 105 ILCS 5/34-1.01 (West 2008).

¶ 5    Although LSCs are designed to be the basic unit of school governance, defendant still has control over certain school district-level decisions, such as opening and closing schools or establishing the educational curriculum. See generally 105 ILCS 5/34-18 (West 2008) (enumerating powers of defendant). Since the laws governing LSCs were first established by the Chicago School Reform Act in 1989 (see Pub. Act 85-1418 (eff. July 1, 1989) (amending Ill. Rev. Stat. 1989, art. 34 (now see 105 ILCS 5/art. 34))), the legislature has amended the School Code several times in order to exempt some schools from LSC control in certain circumstances. As relevant to this appeal, this category of exemptions includes those schools that have been designated by defendant as "small" or "alternative" schools. See 105 ILCS 5/34-2.4b (West 2008).

¶ 6    This case arises out of defendant's closure of several schools that were governed by LSCs and opening small and alternative schools in their place under the control of defendant. In 2002, defendant closed and converted Orr Community Academy High School into several small schools, which included Mose Vines Preparatory Academy. Defendant also closed and converted South Shore High School into several specialized small schools, which included the School of Technology and the School of Entrepreneurship. In 2003, defendant converted Jean Baptiste Point DuSable High School into small schools, which included the Daniel Hale Williams Preparatory School of Medicine. In 2004, defendant opened the small school Pershing West Magnet School on the grounds of the former Douglas Elementary School. In 2005, defendant opened the small school Suder Montessori School in the former Suder Elementary School building. Finally, in 2006, defendant closed George Washington High School and opened Carver Military Academy in its place as an alternative school.

¶ 7    Following conversion of the schools, defendant took direct control of local school functions that had previously been exercised by LSCs. Pursuant to defendant's policy regarding small schools, defendant formed "advisory" LSCs at the small schools. Although the structure of these advisory LSCs is substantially the same as the elected LSCs, the advisory LSCs have no governance authority over the small schools. In the case of Carver Military Academy, it is governed by a board of governors that is appointed by defendant.

¶ 8    The plaintiffs in this case are LSCs of several of the above schools, interested community organizations, and interested community members who are eligible to serve on the LSCs. In February 2008, plaintiffs filed a three-count verified complaint in the circuit court seeking injunctive and declaratory relief. Count I sought a declaration that plaintiffs had a statutory right to elect LSCs with authority over Mose Vines and the Schools of Technology and Entrepreneurship. The complaint did not specifically refer to any other schools by name. Count II sought a writ of *mandamus* that would require defendant to hold LSC elections and recognize the governance authority of the LSCs over the schools. Count III sought in the alternative a common-law writ of *certiorari* in order to obtain judicial review of defendant's actions. In essence, the complaint alleged that defendant had unlawfully taken direct control of the schools and refused to recognize the authority of the elected LSCs.

¶ 9        Defendant moved to dismiss the complaint under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2008)), arguing among other things that section 34-2.4b of the School Code (105 ILCS 5/34-2.4b (West 2008)) exempts small schools such as Mose Vines and the Schools of Technology and Entrepreneurship from LSC control. The circuit court agreed with defendant and dismissed the complaint without prejudice on April 11, 2008.

¶ 10       Plaintiffs then filed an unverified amended complaint, which alleged the same three counts but included additional plaintiffs. The amended complaint now included plaintiffs who were interested in the LSCs of the small schools Mose Vines, the Schools of Technology and Entrepreneurship, Williams Prep, Suder Montessori, and Pershing West, as well as the alternative school Carver Military Academy. Defendant moved for summary judgment on the amended complaint on July 17, 2008, raising substantially the same arguments as the earlier section 2-619.1 motion. The circuit court denied defendant's motion for summary judgment, finding that an issue of material fact existed regarding the conversion process into small schools.

¶ 11       Defendant moved for summary judgment a second time in April 2008. Defendant supported its motion with the affidavits of Joshua Edelman, the executive officer of the office of new schools; Rick Mills, the military area officer for military academies and JROTC; and Estela Beltran, the secretary of defendant, who attested to the foundation of certified copies of documents that were attached to defendant's motion for summary judgment. Defendant again argued that the seven schools were exempt from LSC control.

¶ 12       In response, plaintiffs submitted the affidavit of plaintiff Charles Walker, who was involved with the Mose Vines LSC. Plaintiffs conceded that small and alternative schools are exempt from LSC control in certain circumstances, but contended that section 34-2.4b of the School Code (105 ILCS 5/34-2.4b (West 2008)) only grants the exemption when an LSC does not already exist at the school. Plaintiffs argued that, because all of the schools at issue in this case had duly elected LSCs in place before their conversion to small and alternative schools, defendant was legally prohibited from "dissolving" the governing LSCs and replacing them with advisory LSCs.

¶ 13       Defendant moved to strike plaintiffs' Walker affidavit as a violation of Illinois Supreme Court Rule 191(a) (eff. July 1, 2002) because it contained hearsay and failed to provide a foundation for its exhibits, which the circuit court granted in part. The circuit court then considered defendant's motion for summary judgment and found (1) that the six small schools were exempt from LSC control because they had properly applied for and been granted small school status in accordance with section 34-2.4b, and (2) that Carver Military Academy was exempt from LSC control because there was no legally constituted LSC in place when it was designated as an alternative school. Because all seven of the schools named in plaintiffs' complaint were exempt from LSC control, the circuit court granted summary judgment to defendant on all counts.

¶ 14       Plaintiff timely filed a notice of appeal, and this case is now before us.


¶ 15                                    ANALYSIS

-4-

¶ 16    We review an order granting or denying summary judgment *de novo*. See *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). "Summary judgment is proper where the 'pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* at 308-09 (quoting 735 ILCS 5/2-1005(c) (West 2008)).

¶ 17    A defendant who moves for summary judgment bears the initial burden of production, which may be met either "(1) by affirmatively showing that some element of the case must be resolved in his favor [citation], or (2) by establishing 'that there is an absence of evidence to support the nonmoving party's case.' [Citation.]" *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). Once a defendant has met this initial burden, then the burden shifts to the plaintiff to demonstrate that there is an unresolved issue of material fact that precludes summary judgment. See *id.* If the defendant has submitted sufficient evidence to demonstrate that the defendant is entitled to judgment as a matter of law, then the plaintiff "may not rely on the factual issues raised by the pleadings, but must submit affidavits or refer to depositions or admissions on file that present a contrary version of the facts." *Peregrine Financial Group, Inc. v. Trademaven, L.L.C.*, 391 Ill. App. 3d 309, 313 (2009).

¶ 18    We first examine whether defendant has met its burden of presenting evidence that demonstrates that it is entitled to judgment as a matter of law. As it did in the circuit court, defendant argues that section 34-2.4b of the School Code (105 ILCS 5/34-2.4b (West 2008)) exempts small and alternative schools from LSC control under certain circumstances and instead grants defendant direct control over those schools. Specifically, the section states that the School Code sections that mandate LSC control

> "shall not apply to attendance centers that have applied for and been designated as a 'Small School' by the Board, the Cook County Juvenile Detention Center and Cook County Jail schools, nor to the district's alternative schools for pregnant girls, nor to alternative schools established under Article 13A, nor to the Michael R. Durso School, the Jackson Adult Center, the Hillard Adult Center, the Alternative Transitional School, or any other attendance center designated by the Board as an alternative school, *provided that the designation is not applied to a school building that has in place a legally constituted local school council*; and the board of education shall have and exercise with respect to those schools and with respect to the conduct, operation, affairs and budgets of those schools, and with respect to the principals, teachers and other school staff there employed, the same powers which are exercisable by local school councils with respect to the other attendance centers, principals, teachers and school staff within the district, together with all powers and duties generally exercisable by the board of education with respect to all attendance centers within the district." (Emphasis added.) 105 ILCS 5/34-2.4b (West 2008).[1]

[1]Section 34-2.4b was amended in 2009, but the amendment did not take effect until several years after the events that are alleged in the complaint occurred and after this lawsuit was filed. See Pub. Act 96-105, § 5 (eff. July 30, 2009) (amending 105 ILCS 5/34-2.4b). We will therefore refer

In the event that defendant takes direct control of a school under the statute, section 34-2.4b mandates that defendant "develop *** alternative methods" for involving parents and the community in the administration of the school. *Id.*

¶ 19 The parties offer competing interpretations of the meaning and effect of the proviso italicized above. Plaintiffs contend that the proviso applies to all clauses that precede it, meaning that defendant may only take control of schools that do not have elected LSCs in place at the time that they are designated a small or alternative school. In contrast, defendant argues that the proviso only applies to the immediately preceding clause, that is, to attendance centers designated as alternative schools.

¶ 20 Section 34-2.4b has not previously been interpreted, so we address this as a question of first impression. We interpret the meaning of a statute *de novo*, and the principles of statutory construction are well settled:

> " 'The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] That intent is best gleaned from the words of the statute itself, and where the statutory language is clear and unambiguous, it must be given effect. [Citation.] A court should interpret a statute, where possible, according to the plain and ordinary meaning of the language used. [Citation.] In determining the plain meaning of a statute's terms, we consider the statute in its entirety, keeping in mind the subject it addresses, and the apparent intent of the legislature in enacting the statute. [Citation.]' " *Hennings v. Chandler*, 229 Ill. 2d 18, 24 (2008) (quoting *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 8 (2007)).

¶ 21 Examining the plain language and structure of section 34-2.4b, it is readily apparent that the proviso can only be logically read to apply to the immediately preceding clause. Plaintiffs argue that the proviso should apply both to schools designated as small schools and to those designated as alternative schools because both clauses contain the word "designated." If small and alternative schools were the only schools that section 34-2.4b purports to exempt from LSC control, then plaintiffs' interpretation might be reasonable. However, the proviso comes at the end of a sentence that contains nine separate clauses that each exempt a particular school or class of school. Between the small schools clause (the first exemption listed) and the alternative schools clause (the last exemption), there are seven other clauses that contain exemptions. If we were to accept plaintiffs' argument that the proviso applies to both the first and last clauses listed, then we must necessarily also accept that it applies to the other seven listed exemptions.

¶ 22 But applying the proviso to any of the other seven exemptions yields a nonsensical result. For example, section 34-2.4b exempts the Cook County Juvenile Detention Center and Cook County jail schools from LSC control. However, the proviso "that the designation is not applied to a school building that has in place a legally constituted local school council" makes no sense in the context of that exemption because there is no "designation" to speak of regarding the detention center and jail schools. The same problem appears when we attempt to apply the proviso to the other named schools in section 34-2.4b.

to the version of the statute as it existed prior to the most recent amendment.

-6-

¶ 23      It is well settled that "every part of [a] statute must be considered together and every word or phrase should be given some reasonable meaning within the context of the statute." *Macaluso v. Macaluso*, 334 Ill. App. 3d 1043, 1047 (2002). The problem with plaintiffs' interpretation of the statute is that it requires us to limit the proviso's applicability to two nonconsecutive clauses in a single sentence, yet not apply it to seven other clauses in the same sentence. There is nothing in the plain language of the statute that supports this selective application of the proviso to only two of the clauses that precede it. Plaintiffs' interpretation of the statute is not reasonable, and we cannot accept it.

¶ 24      A more reasonable interpretation of the statute is that the proviso applies only to alternative schools. Read together, the alternative schools clause and the proviso exempt from LSC control "any other attendance center designated by the Board as an alternative school, provided that the designation is not applied to a school building that has in place a legally constituted local school council." Read in this fashion, the "designation" to which the proviso refers is the designation of a school as an alternative school by defendant, and the proviso does not unreasonably encompass other clauses that contain no such designation. Based on the plain language of the statute, the proviso language applies only to designated alternative schools.

¶ 25      Although the statute is unambiguous and we therefore need not look beyond its plain language, we note that our interpretation is supported by the history of section 34-2.4b. Prior to 1999, section 34-2.4b did not contain any proviso, and it instead absolutely exempted a number of schools and types of schools from LSC control, including small schools. See 105 ILCS 5/34-2.4b (West 1998). In 1999, the legislature amended section 34-2.4b, adding both the proviso and the alternative schools clause to the statute as a single unit. See Pub. Act 91-622, § 10 (eff. Aug. 19, 1999) (deleting two named schools and adding "or any other attendance center designated by the Board as an alternative school, provided that the designation is not applied to a school building that has in place a legally constituted local school council"). Considering this history and the plain language of the statute, the legislature intended for the proviso to apply only to schools designated as alternative schools, rather than to all schools listed in section 34-2.4b.

¶ 26      In light of the above discussion, we hold that the proviso language of section 34-2.4b applies only to schools designated by defendant as alternative schools. However, we still must determine whether the small and alternative schools at issue in this case fall under the statutory exemptions from LSC control.

¶ 27      We first consider the six small schools. Section 34-2.4b exempts from LSC control "attendance centers that have applied for and been designated as a 'Small School' by [defendant]." 105 ILCS 5/34-2.4b (West 2008). In support of its summary judgment motion, defendant submitted the affidavit of Joshua Edelman, a board of education officer who is responsible for, among other things, implementing and overseeing defendant's policies related to small and alternative schools. Edelman attested to the conversion process into small schools for Williams Prep, Pershing West, and Suder Montessori, which was also supported by a number of documents attached to Edelman's affidavit.

¶ 28      As Edelman explained in his affidavit, in 2003, a group of educators at the former Jean

Baptiste Point DuSable High School requested that defendant convert the high school into several small schools, one of which became Williams Prep. Defendant held several public hearings on the request and later approved the plan to open Williams Prep as a small school in November 2004. As part of this plan, defendant closed DuSable at the end of the 2005-06 school year and opened Williams Prep as a small school.

¶ 29    Similarly, in 2004, educators and parents requested that defendant open Pershing West as a small school in the building that had formerly housed Douglas Elementary School. Following public hearings, defendant approved the proposal and opened Pershing West in September 2005. Pershing West was officially designated as a small school in August 2007.

¶ 30    In 2005, defendant received a request from a community organization to open Suder Montessori as a small school in the building that had formerly housed Suder Elementary, which had closed in June 2004. Defendant approved the plan and opened Suder Montessori in September 2005, and officially designated it as small school in August 2007.

¶ 31    Regarding the other three small schools, defendant submitted a number of records that detailed the applications and transition into small schools of Mose Vines and the Schools of Technology and Entrepreneurship. In 2002, the principal and LSC of Orr High School submitted a proposal to defendant to convert Orr into four separate small schools, one of which was Mose Vines. A similar request was made to defendant in 2002 to convert South Shore High School into four small schools, which included the Schools of Technology and Entrepreneurship. Mose Vines opened in 2003 and was designated as a small school in 2004. The Schools of Entrepreneurship and Technology opened in 2002 and 2003, respectively, and both were designated as small schools in 2007.

¶ 32    Although plaintiffs argue in their brief on appeal that only a school's LSC can apply for the school to be designated as a small school (which, based on the record, in fact happened in the cases of several of the schools), plaintiffs provide us with no authority for this contention. The record demonstrates that all six of the small schools at issue in this case applied for and received small school designation. Based on this evidence, under section 34-2.4b the schools are exempt from LSC control and defendant is not required to hold LSC elections or to cede governance over the schools to the LSCs. Defendant has carried its initial burden of presenting evidence that demonstrates it is entitled to judgment as a matter of law regarding the six small schools.

¶ 33    We next consider the alternative school, Carver Military Academy. As we found above, section 34-2.4b conditionally exempts schools designated as alternative schools from LSC control, "provided that the designation is not applied to a school building that has in place a legally constituted local school council." 105 ILCS 5/34-2.4b (West 2008). In support of its summary judgment motion, defendant submitted the affidavit of Rick Mills, the military area officer for military academies and JROTC for the Board of Education of the City of Chicago, who attested to the conversion of George Washington Carver High School into the alternative military school Carver Military Academy.

¶ 34       In 2000, the LSC of Carver High School,[2] with defendant's concurrence and support, began making changes to the school in order to convert it into a military academy. However, the school lacked military leadership in key positions and did not have a governance structure that was conducive to a military-based education. In 2004, following complaints from LSC members and parents, Mills began working with defendant to fully transform Carver into a military academy. In February 2006, defendant held public hearings on the question of whether Carver should simply be closed and a proper military academy opened in its place. Based on the hearing officer's findings, defendant approved the closure of Carver effective June 30, 2006, and it approved opening Carver Military Academy as an alternative school on July 1, 2006 at the same location. The new Carver Military Academy operates as a full military academy and, in line with the governance requirements of military academies, is controlled by an appointed board of governors rather than an elected LSC.

¶ 35       Considering these facts in light of section 34-2.4b, Carver Military did not have a legally constituted LSC in place at the time that it was designated an alternative school and is therefore exempt from LSC governance. Although Carver Military occupied the same building as the former Carver High School, the two schools are different legal entities. Defendant exercised its statutory power to close Carver High School on June 30, 2006. See 105 ILCS 5/34-18(1), (4) (West 2008) (powers of the board of education). Plaintiff has presented no authority in support of the proposition that a school's LSC continues to exist following closure of the school, and we are unaware of any.

¶ 36       Plaintiffs essentially argue that closing Carver, which was governed by an elected LSC, and opening Carver Military as an alternative school, in the same building, only a day later, and with no LSC, amounts to illegally "dissolving" the LSC in violation of the proviso. We cannot accept plaintiffs' interpretation of the proviso, however, because it would lead to absurd results. Plaintiffs concede that defendant has the statutory power to open and close schools, but accepting plaintiffs' interpretation of the proviso would mean that defendant could *never* transform a school into an alternative school and directly control it as section 34-2.4b envisions. Under plaintiffs' interpretation, defendant would either be required to cede governance of a newly designated alternative school to an LSC or, alternatively, would be prohibited from closing a school in order to replace it with a directly governed alternative school because either action would amount to illegally "dissolving" the previously existing elected LSC. Both scenarios are contrary to the legislature's grant of authority to defendant to directly govern alternative schools and to open and close schools, and plaintiffs' do not attempt to reconcile this conflict. We therefore cannot accept plaintiffs' position as a reasonable interpretation of the effect of the proviso.

¶ 37       Finally, even if we were to accept plaintiffs' argument that an LSC continues to exist following the closure of a school, the term of Carver High School's LSC expired at the end of the 2005-06 school year. See 105 ILCS 5/34-2.1 (West 2008) (LSC terms are for two years and expire in even-numbered years). There is no evidence in the record that any election for

---

[2]As part of the attempted military conversion process, Carver High School changed its name to George Washington Military Academy in 1999. For clarity, we will refer to the school as Carver.

a new LSC occurred prior to Carver High School's closure, and there is also no evidence in the record that an LSC election was held for Carver Military Academy prior to its designation as an alternative school by defendant. Although plaintiffs attempt to argue that an LSC is a continually existing institution that cannot cease to exist as a legal entity when the terms of its members expire, plaintiffs provide no legal authority or evidence in the record in support of this proposition.

¶ 38    In sum, the record demonstrates that there was no LSC in place at Carver Military Academy when it was designated as an alternative school, and therefore it is exempt from LSC governance under section 34-2.4b. Based on this evidence, defendant has carried its initial burden of demonstrating that it is entitled to judgment as a matter of law regarding Carver Military Academy.

¶ 39    Having found that defendant has presented sufficient factual matters to show that it is entitled to judgment as a matter of law, the burden now shifts to plaintiffs to present evidence showing that there is a material issue of fact that would preclude summary judgment. See *Nedzvekas*, 374 Ill. App. 3d at 624. In their response to defendant's motion, plaintiffs rely on both the allegations presented in their first amended complaint and the affidavit of Charles Walker. However, plaintiffs' amended complaint is unverified, and it is well settled that "[i]f the party moving for summary judgment supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opponent cannot rest on his pleadings to create a genuine issue of material fact." *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 470 (2001). Plaintiffs consequently cannot use the allegations contained in their complaint to defeat defendant's motion for summary judgment.

¶ 40    As a result, we consider only whether the Walker affidavit raises a genuine issue of material fact. We initially note that the circuit court struck paragraphs 3, 5, and 7 of the affidavit on motion of defendant. Plaintiffs do not contest that ruling on appeal, so we will not consider those paragraphs. In the remainder of the affidavit Walker, a Mose Vines LSC member, attests to some of the circumstances surrounding the conversion of Orr High School into the small schools that included Mose Vines. In essence, Walker attests that he was under the impression that the Mose Vines LSC was the governing authority of the school, but that defendant prevented the LSC from exercising its authority over the selection and retention of the principal of the school.

¶ 41    There are two problems with the Walker affidavit. First, Walker attests only to facts regarding Mose Vines and does not present any evidence regarding the other six schools. Because plaintiff did not submit any other evidence in opposition to defendant's motion for summary judgment, plaintiffs have failed to raise an issue of material fact as to those six schools. Second, nowhere does the Walker affidavit present evidence that Mose Vines did not apply for and receive designation as a small school from defendant, which is the dispositive question regarding the exemption from LSC control under section 34-2.4b. In fact, the affidavit seems to assume that Mose Vines was properly converted to a small school. The overall purpose of the affidavit is to establish that Walker would neither have consented to nor approved of the conversion had he known that the LSC would only be advisory, but Walker's understanding of the effect of conversion is irrelevant to the question of whether Mose Vines is exempt from LSC control. The affidavit consequently raises no material issues

of fact as to Mose Vines.

¶ 42                                  CONCLUSION

¶ 43     In sum, defendant has presented evidence that the six small schools and one alternative school that are named in plaintiff's amended complaint are exempt from LSC control, which demonstrates that defendant is entitled to judgment as a matter of law. Because the Walker affidavit, which is the only admissible evidence that plaintiff has submitted in opposition to defendant's motion, does not raise any issue of material fact, summary judgment in defendant's favor is appropriate. The judgment of the circuit court is therefore affirmed.

¶ 44     Affirmed.