STATE, EX REL. ALVIRA E. BRITTON, APPELLEE, V. STEPHEN W. BRYANT ET AL., APPELLANTS.

FILED JANUARY 30, 1914. No. 18,129.

1. Habeas Corpus: CUSTODY OF CHILD. The right of a mother to the custody of her child is not lost beyond recall by an act of relinquishment performed under circumstances of temporary distress or discouragement.

2. ———: ———. The right of the parent is not lightly to be set aside, and it should not be done where unfitness is not affirmatively shown, or forfeiture clearly established.

3. ———: ———. In an application for a writ of habeas corpus by a mother to recover the possession of her child of tender years, the best interest of the child should determine its custody.

4. Evidence examined, and found sufficient to sustain the order of the district court.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*I. J. Dunn,* for appellants.

*F. W. Fitch, contra.*

BARNES, J.

The relator, Alvira E. Britton, brought this action in the district court for Douglas county to recover the pos-

session of her infant child, Robert L. Kendall, Jr., from the custody of the respondents, Stephen W. Bryant and Alice Bryant. The proceeding was an application for a writ of habeas corpus. A trial resulted in an allowance of the writ, and the respondents have appealed.

It appears that the relator was married to one Robert L. Kendall in the city of Lincoln, where she, with her husband, resided for a time, and where her son Robert L. Kendall, Jr., was born. The father appears to have been of a roving disposition, and, failing to support his wife and child, she went to Omaha to find employment, taking her son with her. She first obtained a position as a ticket-seller for a moving picture show. She was ill at the time, and it became necessary for her to go to the hospital for an operation. Being unable to support herself and her child, she applied to the relator Stephen W. Bryant for assistance, and an arrangement was made by which the Bryants were to take the child, Robert L. Kendall, Jr., and care for him until such time as the relator could herself furnish him the means of support. A little later on Mr. Bryant brought an agreement to the relator, which she signed, and by which she relinquished the child to the Bryants. They never adopted him, and after the relator returned from the hospital she commenced to board in the Bryant family, where she remained until she was divorced from her former husband by a decree of the district court for Douglas county, in which the care, custody and education of her minor child was decreed to her. She continued to live in the Bryant family until February 4, 1911, when she was married to her present husband, John Britton. For a time Britton and his wife boarded with the Bryant family. Later on they established a home of their own, and thereafter the relator demanded the custody of her child, which was denied her, and thereupon she brought this action.

The testimony shows that the respondents had no home of their own, and were living in a rented house. It must be said, however, that they furnished the child with the necessaries of life, and the only real complaint that is

made against them is that they failed to send the child to school, to church and Sunday school. It appears that for two years after the child reached school age he only attended school a small part of the year. It also appears that the respondents were given to attending dances, and would frequently take the child out to such places of amusement and keep him all night. It also appears that he was allowed to associate with certain persons who were in the employ of Bryant in his express business. The mother was dissatisfied with the treatment of her child, and was desirous of having him with her; she being fully able to take care of him and furnish him a good home. His stepfather was also anxious to have the child in his home, and he testified that he was able and willing to furnish suitable support and maintenance and a good home for his stepson.

It appears since the marriage of the relator to Britton she has had a good home, has been an attendant at church and Sunday school, and that she desired to have her child brought up under such surroundings and influences. It is contended on the part of the respondents that the relator is bound by the terms of her agreement to surrender her son into their possession. But agreements of that kind are seldom enforced, especially where nothing has been done in the way of the adoption of the child by the foster parents.

In *State v. Nebraska Children's Home Society,* 94 Neb. 255, it was said: "A father can, by his agreement in writing, surrender the custody of his infant child to another, so as to make the custody of that other legal, and he cannot thereafter repudiate such agreement and retain the custody of his child, unless he can show a clear breach of the agreement, or an abuse of the child, or *that the best interest of the child* requires it."

In *Norval v. Zinsmaster,* 57 Neb. 158, it was said: "The right of a parent to the custody of a child is not lost beyond recall by an act of relinquishment performed under circumstances of temporary caprice or discouragement." It was further said in the opinion. "The right of the par-

ent is not lightly to be set aside, and it should not be done where unfitness is not affirmatively shown, or a forfeiture clearly established."

In *State v. Porter,* 78 Neb. 811, 818, speaking of contracts to relinquish a child, it was said: "Such contracts, of course, are always to be subject to the best interest of the child, and are never to be enforced to the sacrifice of its interest."

The father and mother are the natural guardians of their minor children, and are equally entitled to their custody and to the care for their education, being themselves competent to transact their own business and not otherwise unsuitable. If either dies or is disqualified, the guardianship devolves upon the other. In the instant case, the mother having been divorced from the father of the child in question, and it having been found by the district court which gave her the decree that she was a suitable person to have the care, custody and nurture and education of her infant child, she was thereafter, so long as she remained a competent and suitable person, entitled to such care and custody.

It appears that relator has had the exclusive custody of her child since the judgment in this case was rendered; that the child is happy and contented, and is regularly attending school, church and Sunday school. This being so, it is quite apparent that it is for the best interest of the child for the mother to have its care and custody. Such was the conclusion of the district court, and as we view the evidence the finding and judgment of that court was right, and it is

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.