Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/12/2018 08:12 AM CDT

Maria T., appellant, v. Jeremy S.
and Jamie S., appellees.

___ N.W.2d ___

Filed July 20, 2018.    No. S-17-925.

1. **Habeas Corpus: Child Custody: Appeal and Error.** A decision in a
   habeas corpus case involving the custody of a child is reviewed by an
   appellate court de novo on the record.
2. **Habeas Corpus: Appeal and Error.** Whether the allegations in an
   application for a writ of habeas corpus are sufficient to warrant dis-
   charge is a matter of law that an appellate court reviews de novo.
3. **Habeas Corpus: Constitutional Law.** The writ of habeas corpus derives
   from common law and is guaranteed by the Nebraska Constitution.
4. **Habeas Corpus.** The function of the application for a writ of habeas
   corpus is to procure the issuance of the writ, and ordinarily when this is
   done, the application is functus officio for procedural purposes.
5. **Habeas Corpus: Courts.** Courts are cautioned in habeas proceedings to
   follow the traditional procedure illustrated by the habeas corpus statutes
   rather than make up their own procedure.
6. **Habeas Corpus: Child Custody.** The writ of habeas corpus has been
   extended to, and may be used in, controversies regarding the custody
   of infants.
7. ____: ____. In the case of a writ of habeas corpus sued out for the
   detention of a child, the law is concerned not so much about the illegal-
   ity of the detention as about the welfare of the child.
8. ____: ____. When habeas corpus is used in child custody cases, such
   proceedings are governed by considerations of expediency and equity
   and should not be bound by technical rules of practice.
9. **Habeas Corpus.** In a habeas corpus proceeding, before a hearing on the
   merits, the person to whom the writ is directed makes a response to the
   writ and not, strictly speaking, to the relator's application.
10. **Habeas Corpus: Child Custody.** A habeas corpus proceeding involv-
    ing the custody of a child is a proceeding in rem, in which the res is the
    child and its custody.

11. **Habeas Corpus: Child Custody: Jurisdiction.** After the court's jurisdiction has been invoked by a petition for habeas corpus seeking the custody of children, the children become wards of the court and their welfare lies in the hands of the court.

12. **Habeas Corpus.** The proper method for attacking the sufficiency of the application for a writ of habeas corpus is by a motion to quash the writ.

13. **Habeas Corpus: Child Custody.** The procedure set forth in Neb. Rev. Stat. §§ 29-2801 through 28-2824 (Reissue 2016 & Supp. 2017) applies to child custody habeas proceedings.

14. **Habeas Corpus: Pleadings.** The motion to quash admits all ultimate facts well pleaded in a relator's application, as distinguished from conclusions of law therein, and when thus tested it is ascertained that the allegations thereof are not sufficient to warrant discharge, the motion should be sustained and the writ of habeas corpus dissolved or quashed.

15. **Adoption: Parent and Child: Parental Rights.** Agreements in adoption proceedings allowing contact between an adopted child and the child's biological parents require court approval to be enforceable, and even if approved, noncompliance may not be the basis for setting aside a particular adoption, or revoking a relinquishment to the Department of Health and Human Services.

16. **Statutes: Legislature: Intent.** A court gives statutory language its plain and ordinary meaning and will not look beyond the statute to determine the legislative intent when the words are plain, direct, and unambiguous.

17. **Adoption: Statutes: Legislature: Intent.** There is no ambiguity in the Legislature's stated intent to encompass within Neb. Rev. Stat. § 43-163 (Reissue 2016) all written or oral agreements regarding communication or contact after an adoption, when the prospective adoptee is in the custody of the Department of Health and Human Services.

18. **Appeal and Error.** Appellate courts do not generally consider arguments and theories raised for the first time on appeal.

19. **Constitutional Law: Appeal and Error.** Except in the most unusual cases, for a question of constitutionality to be considered on appeal, it must have been properly raised in the trial court. If not so raised, it will be considered to have been waived.

20. **Constitutional Law: Rules of the Supreme Court: Statutes.** Strict compliance with Neb. Ct. R. App. P. § 2-109(E) (rev. 2014) is necessary whenever a litigant challenges the constitutionality of a statute, regardless of how that constitutional challenge may be characterized.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

David V. Chipman, of Monzón, Guerra & Associates, for appellant.

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Dobrovolny, District Judge.

Dobrovolny, District Judge.

## NATURE OF CASE

The district court dismissed on the pleadings a biological mother's petition for habeas corpus challenging the adoptive parents' custody over the child. The mother alleged in the petition that her relinquishment of parental rights to the Department of Health and Human Services (DHHS) and consent to adoption had been obtained through coercion, false pretenses, or fraud. She attached a communication and consent agreement to the petition and alleged that the biological parents had failed to allow her to have contact with the child. The district court concluded the petition did not state a claim, because Neb. Rev. Stat. § 43-164 (Reissue 2016) provides that failure to comply with a court-approved communication or contact agreement shall not be grounds for setting aside or revoking the relinquishment, the consent to adoption, or the adoption decree. We affirm.

## BACKGROUND

### PETITION

Maria T. filed a petition for writ of habeas corpus on May 2, 2017, naming Jeremy S. and Jamie S. as respondents. She alleged that she was the biological mother of a minor child, born in 2012, who was unlawfully restrained by Jeremy and Jamie.

In paragraph IV, Maria alleged that the restraint was illegal, because her "consent to adoption and/or voluntary relinquishment was obtained through coercion and/or false pretenses

and/or fraud, which invalidates such relinquishment and/or consent."

In paragraph V, Maria alleged that her relinquishment was conditioned upon the retention of some "parental rights and any relinquishment or consent given by [Maria] is therefore invalid." In this paragraph, she stated that she was attaching a "'Communication and Contact Agreement'" signed by the parties.

In paragraph VI, Maria alleged that Jeremy and Jamie had failed to allow her to have contact with the child after having made promises and representations that they would.

Maria asked that the court find the relinquishment was invalid and revoked. She asked that the court take custody of the child and determine whether the child's best interests would be served by returning the child to Maria.

The relinquishment was not attached to the petition, but Maria did attach the agreement signed by Maria, Jeremy, and Jamie.

Though the petition did not set forth whether the child was in the custody of DHHS at the time of the relinquishment, the agreement set forth that Jeremy and Jamie were the child's foster parents and that they would be entering into a foster parent adoption after Maria relinquished her parental rights to DHHS.

The agreement set forth that Jeremy and Jamie were to communicate with Maria regarding the child's welfare and allow periodic contact between Maria and the child. However, the agreement also set forth that the parties understood that "this agreement is subject to the approval of the court having jurisdiction over the adoption proceedings."

Further, in the agreement, the parties set forth their understanding that

> the failure to comply with the terms of the order as pursuant to Section 43-163 shall not be grounds for setting aside an adoption decree, for revocation of a written consent for adoption after the consent has been approved by the court having jurisdiction over the adoption proceedings,

or for revocation or relinquishment of parental rights after the relinquishment has been accepted in writing by [DHHS] as provided in Section 43-106.01.

Instead, according to the agreement, any order pursuant to Neb. Rev. Stat. § 43-163 (Reissue 2016) could be enforced by civil litigation.

Neb. Rev. Stat. § 43-106.01 (Reissue 2016) provides:

When a child shall have been relinquished by written instrument, as provided by sections 43-104 and 43-106, to [DHHS] or to a licensed child placement agency and the agency has, in writing, accepted full responsibility for the child, the person so relinquishing shall be relieved of all parental duties toward and all responsibilities for such child and have no rights over such child. Nothing contained in this section shall impair the right of such child to inherit.

The petition did not specifically allege whether the court having jurisdiction over the child's adoption had approved the communication and contact agreement.

## Hearing on Motion to Dismiss

Jeremy and Jamie moved to dismiss for failure to state a claim. Their motion is not in the record. At the hearing on the motion to dismiss, Jeremy and Jamie offered three exhibits into evidence. Maria objected on the ground that it was a hearing on a motion to dismiss "and you're not supposed to consider matters outside the pleading, otherwise it becomes a summary judgment." She did not challenge the authenticity of the documents in the exhibits or object on any other grounds. Jeremy and Jamie's attorney responded that she believed the evidence was appropriately offered in support of her motion to dismiss, because the exhibits contained documents recited in Maria's petition.

The court asked Maria if she would "like a time to submit evidence in this matter." Maria said she would not. But the court did not explicitly state it had changed the status of the motion. The parties proceeded with argument without the

court's ruling on the offer of exhibits and apparently under the assumption that the court was considering a motion to dismiss.

Jeremy and Jamie's attorney indicated her understanding that the allegations in Maria's petition were based on Jeremy and Jamie's alleged failure to comply with the agreement. At no point did Maria's attorney respond that her allegations of "coercion and/or false pretenses and/or fraud" were based on anything other than Jeremy and Jamie's failure to comply with the agreement. Maria's attorney did not ask the court for leave to amend the petition.

At the conclusion of the hearing, the court received the exhibits into evidence. Exhibit 1 consists of Maria's relinquishment to DHHS, her consent form, and DHHS' acceptance of her relinquishment. Exhibit 1 reflects that Maria voluntarily relinquished to DHHS her parental rights over the child on June 12, 2015. Exhibit 2 is the agreement that was attached to the petition. Exhibit 3 is the bill of exceptions for the adoption hearing. The bill of exceptions reflects that on May 13, 2016, the separate juvenile court approved the adoption of the child by Jeremy and Jamie, but explicitly did not approve the communication and contact agreement for the reason that it was not in the child's best interests.

## DISTRICT COURT'S ORDER

The district court dismissed the petition for failure to state a claim and alternatively addressed granting summary judgment in favor of Jeremy and Jamie.

In the court's analysis on the motion to dismiss, the court stated that it did not consider any of the exhibits. But the court considered the attached agreement as part of the allegations of the petition. The agreement, the court said, confirmed that the child was adopted by way of a foster parent adoption wherein Maria unconditionally relinquished her parental rights to DHHS.

The court concluded that Maria had failed to state a claim, because she had failed to allege that the agreement had been

approved by the court. Alternatively, after citing to both § 43-164 and Neb. Rev. Stat. § 43-166(6) (Reissue 2016), the court concluded that "neither the statutes in effect at the time, nor the case law, afford [Maria] the opportunity to allege fraud, duress or coercion on the basis of the Communication and Contact Agreement entered into between the parties."

Next, the court set forth an analysis regarding "if this Court were to treat [Jeremy and Jamie's] motion as a motion for summary judgment rather than a motion to dismiss." The court found no genuine issue as to the fact that the court never approved the agreement. Therefore, the court reasoned, the agreement could not provide any basis for Maria's allegation that the relinquishment was procured through fraud, duress, and coercion. Even if the agreement had been approved, the court stated that as a matter of law, Jeremy and Jamie's failure to comply with the agreement's terms could not be used as a basis for invalidating the relinquishment and setting aside the adoption.

In its conclusion, the court set forth in the order that it was sustaining Jeremy and Jamie's motion to dismiss. The court ordered the case dismissed with prejudice. Maria appeals.

## ASSIGNMENTS OF ERROR

Maria assigns that the district court erred in (1) granting Jeremy and Jamie's motion to dismiss and (2) finding in the alternative that Jeremy and Jamie were entitled to summary judgment.

## STANDARD OF REVIEW

[1] A decision in a habeas corpus case involving custody of a child is reviewed by an appellate court de novo on the record.[1]

[2] Whether the allegations in an application for a writ of habeas corpus are sufficient to warrant discharge is a matter of law that an appellate court reviews de novo.[2]

---

[1] *Monty S. v. Jason W.*, 290 Neb. 1048, 863 N.W.2d 484 (2015).

[2] See *State v. Determan*, 292 Neb. 557, 873 N.W.2d 390 (2016).

## ANALYSIS

As a threshold matter, we clarify the procedural rules applicable to an application for a writ of habeas corpus in a child custody matter. For the reasons that follow, we conclude that the court and the parties did not follow the correct procedure for a habeas proceeding. Nevertheless, the court did not err in its ultimate determination that Maria failed to allege facts that would establish that Jeremy and Jamie were not entitled to sole custody of Maria's biological child.

[3] The writ of habeas corpus derives from common law[3] and is guaranteed by the Nebraska Constitution in article I, § 8, which provides that "[t]he privilege of the writ of habeas corpus shall not be suspended." Neb. Rev. Stat. §§ 29-2801 through 29-2824 (Reissue 2016 & Supp. 2017) set forth certain procedures for a habeas corpus proceeding. The statutory procedure set forth in §§ 29-2801 through 29-2824 appears to have largely codified the traditional procedure under common law for the writ.[4] We have said that the Nebraska Constitution provides for the remedy of habeas corpus, while the procedure for the writ is governed by statute.[5] It is a special civil proceeding providing a summary remedy to persons illegally detained.[6]

The first step in order to initiate a habeas proceeding is for "any person," who "is or shall be confined in any jail . . . or shall be unlawfully deprived of his or her liberty," to "make application, either by him or herself or by any person on his or her behalf."[7] If, "by oath or affirmation," it appears in the application that "the person so imprisoned or

---

[3] See, e.g., *In re Application of Tail, Tail v. Olson*, 144 Neb. 820, 14 N.W.2d 840 (1944).

[4] See, e.g., Brandon L. Garrett, *Habeas Corpus and Due Process*, 98 Cornell L. Rev. 47 (2012).

[5] *Sanders v. Frakes*, 295 Neb. 374, 888 N.W.2d 514 (2016).

[6] *Id.*

[7] § 29-2801.

detained is imprisoned or detained without any legal authority
. . . it shall be [the judge's] duty forthwith to allow a writ of
habeas corpus."[8]

Before anything else, the court must determine, sua sponte
and based on the allegations in the application, if the writ
should issue.[9] We have explained that if the relator shows by
the facts alleged in the application for the writ that the relator
is not entitled to relief, then the writ should be denied and the
application dismissed, and that order may be appealed.[10] In
contrast, when the relator sets forth facts which, if true, would
entitle the relator to discharge, the writ is a matter of right
and the relator should be produced before the court.[11] Habeas
corpus is a Latin term that, translated literally, means "'"that
you have the body,"'"[12] and the writ commands that the person
holding the body of the person allegedly illegally detained pro-
duce the body on the day specified and submit to and receive
whatever the court shall consider in the relator's behalf.[13]

Thus, pursuant to §§ 29-2802 and 29-2803, when a judge
issues the writ, it must be obeyed, or resistance thereto made
in the regular manner.[14] The person detained and named in the
writ must be brought before the court on the day specified,
and while the hearing and final disposition are pending, the
person allegedly illegally detained will be subject to a court
order for safekeeping or detention, as the nature of the case

---

[8] *Id.*

[9] See *Hennings v. Chandler*, 229 Ill. 2d 18, 890 N.E.2d 920, 322 Ill. Dec. 1 (2008) (and discussion of cases therein).

[10] See *In re Application of Tail, Tail v. Olson, supra* note 3. See, also, e.g., *Johnson v. Gage*, 290 Neb. 136, 858 N.W.2d 837 (2015).

[11] *In re Application of Dunn*, 150 Neb. 669, 35 N.W.2d 673 (1949).

[12] *Sanders v. Frakes, supra* note 5, 295 Neb. at 379, 888 N.W.2d at 519.

[13] See, e.g., *Click v. Click*, 98 W. Va. 419, 127 S.E.2d 194 (1925); Black's Law Dictionary 825 (10th ed. 2014).

[14] See *Nebraska Children's Home Society v. State*, 57 Neb. 765, 78 N.W. 267 (1899).

may require.[15] "Neither ministerial officer nor private citizen can be permitted to ignore its mandate because he [or she] may think the judge allowed it on insufficient grounds."[16]

Section 29-2817 describes that before the hearing on the underlying merits, the person to whom the writ is directed shall file a "return," explaining whether he or she has the relator under his or her "custody or power, or under restraint" and the authority for such custody, power, or restraint. Under § 29-2819, the "return" is treated differently depending upon whether the person detained is in custody under any warrant or commitment in pursuance of law or is instead restrained of liberty by any alleged private authority. In the case of an alleged private authority, "the return of the writ shall be considered only as a plea of the facts therein set forth, and the party claiming the custody shall be held to make proof of such facts."[17]

[4] The habeas statutes do not describe by what means, if any, the respondent may challenge the sufficiency of the relator's application. But we have held that before filing a response, the respondent may challenge the sufficiency of the statements in the application of the relator by filing a motion to quash or to "dissolve" the writ.[18] This is consistent with traditional common-law habeas corpus procedure.[19] The function of the application is to procure the issuance of the writ, and

---

[15] See §§ 29-2802 and 29-2822. See, also, § 29-2806.

[16] *Nebraska Children's Home Society v. State, supra* note 14, 57 Neb. at 770, 78 N.W. at 269.

[17] § 29-2819.

[18] See *Sedlacek v. Greenholtz*, 152 Neb. 386, 388, 41 N.W.2d 154, 156 (1950). See, also, *Case v. State*, 177 Neb. 404, 129 N.W.2d 107 (1964), quoting *Sedlacek v. Hann*, 156 Neb. 340, 56 N.W.2d 138 (1952), *vacated on other grounds* 381 U.S. 336, 85 S. Ct. 1486, 14 L. Ed. 2d 422 (1965); *In re Application of Dunn, supra* note 11.

[19] See, *Kennedy v. Walker*, 135 Conn. 262, 63 A.2d 589 (1948); *Com. ex rel. Margiotti, Aplnt. v. U. Tr. Co. et al.*, 327 Pa. 497, 194 A. 661 (1937); Garrett, *supra* note 4.

ordinarily when this is done, the application is functus officio for procedural purposes.[20]

[5] As such, when the proper procedure is followed, the application has served its purpose by obtaining the writ and, by the time the respondent is on notice, the application is no longer in effect such that it could be subject to a motion to dismiss for failure to state a claim. For this reason, we have said that a demurrer is not a motion usually associated with writs of habeas corpus.[21] Courts are cautioned in habeas proceedings to follow the traditional procedure illustrated by the habeas corpus statutes rather than make up their own procedure.[22]

[6-8] The traditional procedure described above applies equally to child custody habeas proceedings. Since 1890,[23] we have recognized, "'"[T]he writ of habeas corpus has been extended to, and may be used in, controversies regarding the custody of infants."'"[24] This extension occurred under the English common law before the establishment of our state.[25] In the case of a writ of habeas corpus sued out for the detention of a child, the law is concerned not so much about the illegality of the detention as about the welfare of the child.[26]

---

[20] See *In re Application of Tail, Tail v. Olson, supra* note 3.

[21] See *Rehbein v. Clarke*, 257 Neb. 406, 598 N.W.2d 39 (1999).

[22] See *O'Neal v. State*, 290 Neb. 943, 863 N.W.2d 162 (2015) (Cassel, J., concurring).

[23] See *Giles v. Giles*, 30 Neb. 624, 46 N.W. 916 (1890).

[24] *State ex rel. Cochrane v. Blanco*, 177 Neb. 149, 152, 128 N.W.2d 615, 617 (1964); *Lung v. Frandsen*, 155 Neb. 255, 51 N.W.2d 623 (1952); *Hanson v. Hanson*, 150 Neb. 337, 34 N.W.2d 388 (1948).

[25] See, e.g., Sarah Abramowicz, Note, *English Child Custody Law, 1660-1839: The Origins of Judicial Intervention in Paternal Custody*, 99 Colum. L. Rev. 1344 (1999); Eric M. Freedman, *Habeas Corpus in Three Dimensions, Dimension I: Habeas Corpus as a Common Law Writ*, 46 Harv. C.R.-C.L.L. Rev. 591 (2011).

[26] See *Christopherson v. Christopherson*, 177 Neb. 414, 129 N.W.2d 113 (1964).

Further, we have repeatedly recognized, as was acknowledged under common law,[27] that when habeas corpus is used in child custody cases, such proceedings are governed by considerations of expediency and equity and should not be bound by technical rules of practice.[28] But while there may be some distinctions in child custody habeas proceedings from prisoner habeas proceedings as to the treatment of the underlying merits, it does not follow that the traditional writ procedures outlined in our habeas statutes do not govern applications for writs of habeas corpus when child custody is involved.

[9-11] In *In re Application of Tail, Tail v. Olson*,[29] a prisoner habeas case, we considered the nature of habeas corpus proceedings, both involving prisoners and child custody. We cited to §§ 29-2802 and 29-2817, and explained that before a hearing on the merits, the person to whom the writ is directed makes a response to the writ and not, strictly speaking, to the relator's application. In *In re Application of Tail, Tail*, we observed that we previously held a habeas corpus proceeding involving the custody of a child is a proceeding in rem, in which the res is the child and its custody.[30] Once the writ issues, "[a]fter the court's jurisdiction has been invoked by a petition for habeas corpus seeking the custody of children, the children become wards of the court and their welfare lies in the hands of the court."[31]

---

[27] See Annot., 4 A.L.R.3d 1277, § 1[c] (1965).

[28] *McCormick v. State*, 218 Neb. 338, 354 N.W.2d 160 (1984); *Walker v. Gehring*, 172 Neb. 398, 109 N.W.2d 724 (1961); *State ex rel. Hamilton v. Boiler*, 159 Neb. 458, 67 N.W.2d 426 (1954); *Lung v. Frandsen, supra* note 24; *Hanson v. Hanson, supra* note 24.

[29] See *In re Application of Tail, Tail v. Olson, supra* note 3, citing *Terry v. State*, 77 Neb. 612, 110 N.W. 733 (1906).

[30] *Id.*

[31] *Osterholt v. Osterholt*, 173 Neb. 683, 685, 114 N.W.2d 734, 736 (1962). See, also, *Hanson v. Hanson, supra* note 24.

[12] In *Nebraska Children's Home Society v. State*,[32] a child custody habeas case, we again cited to our habeas statutes, to what is now § 29-2804. And we applied the principle that the proper method for attacking the sufficiency of the application for a writ of habeas corpus is by a motion to quash the writ.[33] Several other child custody habeas cases in Nebraska appear to have followed the traditional writ procedure set forth in the habeas statutes, albeit without citing to the statutory scheme.[34]

We recognize that our case law concerning child custody habeas proceedings has not always been consistent. For the most part, our cases have failed to cite to §§ 29-2801 through 29-2824.[35] Furthermore, our child custody habeas case law appears to have oftentimes treated the application for a writ of habeas corpus as if it were a petition setting forth a cause of action, to which the respondents would file an answer, with the

---

[32] *Nebraska Children's Home Society v. State, supra* note 14.

[33] *Id.*

[34] See, *Reynolds v. Green*, 232 Neb. 60, 439 N.W.2d 486 (1989), *overruled on other grounds, Gomez v. Savage*, 254 Neb. 836, 580 N.W.2d 523 (1998); *Walker v. Gehring, supra* note 28; *State v. Porter*, 78 Neb. 811, 112 N.W. 286 (1907); *Terry v. Johnson*, 73 Neb. 653, 103 N.W. 319 (1905); *Nebraska Children's Home Society v. State, supra* note 14; *Janet K. v. Kevin B.*, 5 Neb. App. 169, 556 N.W.2d 270 (1996).

[35] See, e.g., *Brett M. v. Vesely*, 276 Neb. 765, 757 N.W.2d 360 (2008); *Gomez v. Savage, supra* note 34; *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992); *L.G.P. v. Nebraska Dept. of Soc. Servs.*, 239 Neb. 644, 477 N.W.2d 571 (1991); *Friedrichsen v. Koehn*, 216 Neb. 628, 344 N.W.2d 672 (1984); *Marcus v. Huffman*, 187 Neb. 798, 194 N.W.2d 221 (1972); *Hausman v. Shields*, 184 Neb. 88, 165 N.W.2d 581 (1969); *Gray v. Hartman*, 181 Neb. 590, 150 N.W.2d 120 (1967); *State ex rel. Cochrane v. Blanco, supra* note 24; *Osterholt v. Osterholt, supra* note 31; *Lakey v. Gudgel*, 158 Neb. 116, 62 N.W.2d 525 (1954); *Barnes v. Morash*, 156 Neb. 721, 57 N.W.2d 783 (1953); *Lung v. Frandsen, supra* note 24; *Hanson v. Hanson, supra* note 24; *In re Application of Schwartzkopf*, 149 Neb. 460, 31 N.W.2d 294 (1948); *State v. Bryant*, 95 Neb. 129, 145 N.W. 266 (1914); *Clarke v. Lyon*, 82 Neb. 625, 118 N.W. 472 (1908); *Norval v. Zinsmaster*, 57 Neb. 158, 77 N.W. 373 (1898).

writ issuing or not issuing at the close of all the proceedings rather than at the beginning.[36] Contrary to our cases stating that a motion to quash is the proper procedure to challenge the sufficiency of the application for the writ, in *Christopherson v. Christopherson*,[37] for example, we applied the civil procedure statutes to determine that the respondent's demurrer should be considered a motion to dismiss. We ultimately held that the motion to dismiss was improper insofar as it attempted to obtain dismissal by means of factual allegations as yet untested in court.[38]

[13] Thus, we clarify here that the procedure set forth in §§ 29-2801 through 29-2824 applies to child custody habeas proceedings. In *Mayfield v. Hartmann*,[39] we addressed a habeas proceeding involving civil commitment and said that we have uniformly applied rules limiting collateral attacks by habeas corpus to void judgments to "both civil and criminal cases alike." We likewise find that the procedure for child custody and prisoner custody habeas proceedings should be uniform. Even if §§ 29-2801 through 29-2824 did not directly control, the traditional common-law procedures would not be different.[40] The procedural mechanism to bring the child into court quickly and procure the court's temporary custody

---

[36] See, e.g., *Brett M. v. Vesely, supra* note 35; *Gomez v. Savage, supra* note 34; *Uhing v. Uhing, supra* note 35; *L.G.P. v. Nebraska Dept. of Soc. Servs., supra* note 35; *Friedrichsen v. Koehn, supra* note 35; *Marcus v. Huffman, supra* note 35; *Gray v. Hartman, supra* note 35; *Osterholt v. Osterholt, supra* note 31; *Lakey v. Gudgel, supra* note 35; *Hanson v. Hanson, supra* note 24; *In re Application of Schwartzkopf, supra* note 35; *State v. Bryant, supra* note 35; *Clarke v. Lyon, supra* note 35.

[37] *Christopherson v. Christopherson, supra* note 26.

[38] See *id.*

[39] *Mayfield v. Hartmann*, 221 Neb. 122, 125, 375 N.W.2d 146, 149 (1985), citing *Schleuter v. McCuiston*, 203 Neb. 101, 277 N.W.2d 667 (1979); *State ex rel. Casselman v. Macken*, 194 Neb. 806, 235 N.W.2d 867 (1975); and *Sedlacek v. Hann, supra* note 18.

[40] See Freedman, *supra* note 25.

over that child's welfare through issuance of a writ pending a custody hearing protects the interests of the child and the parents alike.

Accordingly, a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b) should play no role in a child custody habeas proceeding. Instead, a challenge should be made to the writ, if it is issued, by means of a motion to quash.

That was not the procedure followed below. The court erred by failing to determine sua sponte whether to issue the writ, from which could have been followed a motion to quash rather than a motion to dismiss under § 6-1112(b). We will nevertheless review the court's ultimate conclusion that the allegations in the application were insufficient to state a claim challenging the lawfulness of the restraint of the child in Jeremy and Jamie's custody. In *Rehbein v. Clarke*,[41] we similarly considered whether the court had properly dismissed the application for writ of habeas corpus, even though we held that the court had failed to follow proper procedure when it entertained a demurrer instead of a motion to quash. The question regardless was whether the allegations of the application were sufficient to warrant discharge.[42]

In accordance with *Rehbein*, we will examine whether Maria's allegations were sufficient to warrant the child's discharge from Jeremy and Jamie's custody, but we will not address the mandate in § 6-1112(b) regarding conversion of a motion to dismiss into a motion for summary judgment. Habeas corpus proceedings, like postconviction proceedings, are not governed by the Nebraska Court Rules of Pleading in Civil Cases.[43] The mandate in § 6-1112(b) is thus inapplicable to habeas proceedings. Further, we can determine, without considering the exhibits admitted at the hearing, whether Maria failed to allege facts warranting relief.

---

[41] *Rehbein v. Clarke, supra* note 21.

[42] See *id.*

[43] See *State v. Robertson*, 294 Neb. 29, 881 N.W.2d 864 (2016).

[14] The motion to quash admits all ultimate facts well pleaded in a relator's application, as distinguished from conclusions of law therein, and when thus tested it is ascertained that the allegations thereof are not sufficient to warrant discharge, the motion should be sustained and the writ of habeas corpus dissolved or quashed.[44] Maria alleged in her application that the relinquishment was "conditioned upon the retention of some parental rights" and that Jeremy and Jamie "made promises and representations to [Maria] that she could see the child" and had failed to allow her to do so. The attached agreement provides the additional factual allegations that this was a foster parent adoption after Maria gave consent to adopt and signed a voluntary relinquishment to DHHS (which DHHS accepted). The agreement is asserted to amount to a *condition* under paragraph V of the petition, therefore rendering the relinquishment invalid.

[15] Communication and contact agreements are contemplated and discussed by the law at Neb. Rev. Stat. §§ 43-162 to 43-166 (Reissue 2016). These statutes specifically provide that the agreements require court approval to be enforceable, and even if approved, noncompliance may not be the basis for setting aside a particular adoption, or revoking a relinquishment to DHHS. Therefore, under the law, such an agreement in any form could never be considered an invalidating condition, and noncompliance cannot be the basis for the relief Maria seeks.

[16] Section 43-162 provides for court approval of communication or contact agreements for adoptees in the custody of DHHS:

The prospective adoptive parent or parents and the birth parent or parents of a prospective adoptee may enter into an agreement regarding communication or contact after the adoption between or among the prospective adoptee and his or her birth parent or parents if the prospective

---

[44] See *Sedlacek v. Greenholtz, supra* note 18.

adoptee is in the custody of [DHHS]. Any such agreement
shall not be enforceable unless approved by the court pur-
suant to section 43-163.

A court gives statutory language its plain and ordinary meaning
and will not look beyond the statute to determine the legisla-
tive intent when the words are plain, direct, and unambiguous.[45]
Under the plain language of § 43-162, "an agreement regarding
communication or contact . . . shall not be enforceable unless
approved by the court."

While the application failed to describe whether the agree-
ment was approved by the juvenile court, even had the agree-
ment been approved, its breach would not have rendered
Maria's relinquishment and consent invalid. Section 43-164
states that failure to comply with a court-approved commu-
nication or contact agreement shall not be grounds for setting
aside or revoking a relinquishment, consent to adoption, or an
adoption decree:

> Failure to comply with the terms of an order entered
> pursuant to section 43-163 shall not be grounds for
> setting aside an adoption decree, for revocation of a
> written consent to adoption after the consent has been
> approved by the court, or for revocation of a relinquish-
> ment of parental rights after the relinquishment has been
> accepted in writing by [DHHS] as provided in section
> 43-106.01.

[17] Maria argues on appeal that her factual allegations in
the application for the writ included an alleged breach of a pri-
vate, apparently oral, promise to maintain contact, as opposed
to the written agreement presented during the adoption pro-
ceeding. But these statutes are not limited to written agree-
ments or agreements presented to the juvenile court. We find
no ambiguity in the Legislature's stated intent to encompass
within § 43-163 all written or oral agreements regarding com-
munication or contact after an adoption, when the prospective

---

[45] *In re Interest of Joseph C.*, 299 Neb. 848, 910 N.W.2d 773 (2018).

adoptee is in the custody of DHHS. Under § 43-163, such agreements are enforceable only if approved by the juvenile court and, pursuant to § 43-164, such agreements are never enforceable by way of revoking the consent and dissolving the adoption.

Thus, the facts alleged in Maria's application, as distinguished from conclusions of law therein, were not sufficient to warrant discharge. Rather, the allegations in the application show on their face that there is an insuperable bar to relief. While Maria asserted more broadly in her application that her relinquishment and consent was invalid because it was "obtained through coercion and/or false pretenses and/or fraud," this naked conclusion of law was insufficient to warrant a writ of habeas corpus.

[18-20] For the first time on appeal, Maria raises the constitutionality of the statutes governing consent and contact agreements in relinquishments to DHHS. Appellate courts do not generally consider arguments and theories raised for the first time on appeal.[46] Except in the most unusual cases, for a question of constitutionality to be considered on appeal, it must have been properly raised in the trial court.[47] If not so raised, it will be considered to have been waived.[48] Furthermore, strict compliance with Neb. Ct. R. App. P. § 2-109(E) (rev. 2014) is necessary whenever a litigant challenges the constitutionality of a statute, regardless of how that constitutional challenge may be characterized.[49] Maria failed to file a separate notice challenging the constitutionality of a statute and serve her brief on the Attorney General, as required by § 2-109(E).

---

[46] *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

[47] *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997).

[48] *Id.*

[49] *State v. Boche*, 294 Neb. 912, 885 N.W.2d 523 (2016).

While habeas corpus is an appropriate remedy to challenge the legality of a child's adoption and custody,[50] §§ 43-162 and 43-164 present an insuperable bar to relief under the circumstances and events alleged in Maria's petition. Although the proper procedure was not followed, we affirm the court's ultimate determination that the application failed to allege facts that could warrant relief in a habeas proceeding. For this reason, we find no merit to Maria's assignments of error.

## CONCLUSION

For the foregoing reasons, we hold that the district court did not err in dismissing Maria's application for a writ of habeas corpus.

AFFIRMED.

---

[50] See *Jesse B. v. Tylee H.*, 293 Neb. 973, 883 N.W.2d 1 (2016).