IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. TREW

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROGER G. TREW, APPELLANT.

Filed August 11, 2020.   Nos. A-19-922, A-19-926.

Appeals from the District Court for Kearney County: TERRI S. HARDER, Judge. Affirmed.

Jonathan R. Brandt, of Anderson, Klein, Brewster & Brandt, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

In these consolidated cases, Roger Trew appeals from his convictions in the District Court for Kearney County of one count of terroristic threats, three counts of possession of a firearm during the commission of a felony, and one count of possession of an explosive during the commission of a felony. Trew challenges the sufficiency of the evidence to support his convictions and the sentences imposed. He also asserts that he received ineffective assistance of counsel. For the following reasons, we affirm.

## II. BACKGROUND

Trew was originally charged by complaint in two separate cases in the county court of Kearney County following an incident on July 5, 2018. He was ultimately charged by information in the district court, in two separate cases, with one count of terroristic threats, three counts of use of a firearm to commit a felony, one count of using explosives to commit a felony (yellow duct

- 1 -

tape explosive device and 16 ounce bottle pyrodex), and one count of possession of a destructive device. The cases were consolidated for trial and a bench trial was held on June 17, 2019. At the beginning of the trial, the State struck Leslie Randall's initials from the body of the terroristic threats charge, so that after reciting the elements of the crime, it now read "to wit: threatened he was coming to shoot up the place at Fort Kearney [sic] State Park." The following evidence was heard at trial.

On July 4, 2018, Trew was spending time with Randall, his significant other, at his father's home in Minden, Nebraska. Trew and Randall got into an argument, and Randall left Minden to go to Fort Kearny campground. Several members of Randall's family and her former husband's family were camping at this location. Randall testified that she left Fort Kearny and she stayed overnight at her daughter's apartment in Minden. Randall's former mother-in-law, her former brother-in-law, and her son all testified that Randall stayed overnight in her ex-husband's camper at Fort Kearny and was present at the campsite during the next morning. At the time of trial, Randall and Trew were engaged.

The next day, on July 5, 2018, Randall received text messages from Trew asking where she was the night before. Photographs of the text messages were received at trial. At trial, Trew explained that he used a "talk to text" feature on his phone, where he spoke into his phone's microphone and the phone automatically converted his speech into text messages. Among the texts that Randall received from Trew were a picture of a speedometer showing a speed of around 100 miles per hour and messages where Trew stated "And I'm coming fast," "I will give you three minutes to get over to the fucking park or else I'm going to come in the rolling up and I'm going to stop fucking killing people," and "You ready for this fucking shoot out because I am." At trial, Trew testified that these texts were supposed to say "drilling people," as in asking questions, and "shout out," but were changed to the messages Randall received by using the talk to text feature. Randall testified that she didn't tell anyone about the texts, but her former mother-in-law and brother-in-law testified that Randall showed them the text messages. Randall's son testified that Randall showed him a text from Trew that said "I'm looking at your precious family and stuff and I can end it all," although that text message was not included in the exhibit offered into evidence. Randall's former brother-in-law testified that Randall's son was yelling to the group that Trew was coming to the campground and "he was going to shoot up everybody and shoot up the place, and shoot up the precious little family." Randall's son called 911, despite Randall's request that he not call law enforcement as she did not want Trew to be arrested.

Shortly after Randall received the text messages from Trew, several members of Randall's former family saw Trew driving quickly into the campsite in a black Jeep. Trew parked the Jeep and exited the vehicle, but Randall's former mother-in-law did not see where he went. Trew testified that after exiting the vehicle, he started swinging on a swing set.

According to Randall's former mother-in-law, prior to Trew's arrival, Randall told her that she wasn't supposed to be there and she appeared scared. Randall's former brother-in-law and her son confirmed that Randall was shaking and appeared scared, and that she was hiding in one of the campers. These witnesses also indicated that they were afraid, particularly because of the presence of several young infants and children in their group. Randall denied being afraid herself, although she was concerned about the safety of the children present.

Police officers arrived at the campsite, located Trew's Jeep, and found Trew sitting on a utility post near the Jeep. The officers then handcuffed Trew and checked for weapons. The officers did not find any weapons on Trew's person, but there was a rifle in plain view in the backseat of the Jeep and a hard plastic gun case in the cargo area. Trew told the officers that there was also a .40-caliber handgun under the front seat of the Jeep, which the officers were able to confirm. Upon a search of the vehicle, the officers located three guns (the hard plastic gun case also contained a rifle), along with a possible explosive device (item wrapped in yellow tape with a fuse), and a bottle of pyrodex, which was "a black powder substitute for muzzleloading rifles." There were large amounts of ammunition in the vehicle as well. Upon further investigation, a hazardous device technician for the Nebraska State Patrol opined that the pyrodex bottle contained a chemical compound that is designed to function by explosion. Trew testified that he had the guns in his vehicle because he planned on going shooting with his dad later that day, and that he always carried the handgun under the seat because he had a concealed carry permit.

On June 19, 2019, the court entered orders finding Trew guilty of one count of terroristic threats, three counts of possession of a deadly weapon during commission of a felony, and one count of possession of an explosive to commit a felony (bottle of pyrodex). The court granted Trew's directed verdict as to the count charging Trew with use and possession of an explosive during the commission of a felony (the yellow duct tape explosive device), the portion of the count charging him with use of an explosive during the commission of a felony (pyrodex), and the portion of the count dealing with use of a firearm to commit a felony. Trew was sentenced to 2 to 3 years' imprisonment for the terroristic threats charge, and to 1 to 3 years' imprisonment for each firearm count, all to be served consecutively. Trew was sentenced to 2 to 5 years' imprisonment on the possession of the explosive during the commission of a felony, to be served concurrent with his other convictions.

Trew now appeals.

## III. ASSIGNMENTS OF ERROR

Restated, Trew assigns that (1) the district court erred in finding sufficient evidence to support each of his convictions, (2) he received ineffective assistance of counsel, and (3) the district court erred in the sentences imposed.

## IV. STANDARD OF REVIEW

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Gomez*, 305 Neb. 222, 939 N.W.2d 763 (2020).

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether counsel was or was not prejudiced by counsel's alleged deficient performance. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Steele*, 300 Neb. 617, 915 N.W.2d 560 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Trew first argues that the evidence was not sufficient to support his convictions. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020).

### (a) Terroristic Threats

Trew was convicted of one count of Terroristic Threats under Neb. Rev. Stat. § 28-311.01 (Reissue 2016), which provides in relevant part:

> (1) A person commits terroristic threats if he or she threatens to commit any crime of violence:
> (a) With the intent to terrorize another;
> (b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation; or
> (c) In reckless disregard of the risk of causing such terror or evacuation.

A crime of violence is an act which injures or abuses through the use of physical force. *Underwood v. Nebraska State Patrol,* 287 Neb. 204, 842 N.W.2d 57 (2014). To threaten is commonly understood to mean promising punishment, reprisal, or distress. See *State v. Curlile*, 11 Neb. App. 52, 642 N.W.2d 517 (2002). For purposes of § 28-311.01, a threat may be written, oral, physical, or any combination thereof. *State v. Curlile, supra.*

Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to find that the elements of terroristic threats were proven in this case. Trew sent messages to Randall stating that he was going to start "killing people" and have a "shoot out," clearly threatening to commit a crime of violence. These messages, at a minimum, were clearly made in reckless disregard of the risk of causing terror to persons present at the campground. Contrary to Trew's argument, there is nothing unclear about these messages. Further, the district court, as the trier of fact, was entitled to reject Trew's argument that he was a victim of the "autocorrect" feature on his cell phone, which the court apparently did.

Trew also argues that his text messages are constitutionally protected speech under the First Amendment. Appellate courts do not generally consider arguments and theories raised for the first time on appeal. *Maria T. v. Jeremy S.*, 300 Neb. 563, 915 N.W.2d 441 (2018). Except in the most unusual cases, for a question of constitutionality to be considered on appeal, it must have been properly raised in the trial court. *Id*. If not so raised, it will be considered to have been waived. *Id*. Furthermore, strict compliance with Neb. Ct. R. App. P. § 2-109(E) (rev. 2014) is necessary whenever a litigant challenges the constitutionality of a statute, regardless of how that constitutional challenge may be characterized. *Maria T. v. Jeremy S., supra*. Trew did not preserve this constitutional argument as he did not make the argument to the district court and did not file the notice required by § 2-109(E). Even if this argument had been properly preserved, we conclude that the text messages are not protected speech. See, *Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) (First Amendment does not protect communication of serious expression of intent to commit act of unlawful violence to particular individual or group of individuals).

### (b) Possession of Deadly Weapon

Although the heading of the Information listed the firearm counts as "Use of a Firearm to Commit a Felony," the body of the Information alleged that Trew used a firearm to commit a felony or did unlawfully possess a firearm during the commission of a felony. As noted above, the district court directed a verdict in Trew's favor with respect to the "use" allegation but found him guilty of three counts of possession of a firearm during the commission of a felony. Under Neb. Rev. Stat. § 28-1205 (Reissue 2016):

> (2)(a) Any person who possesses a firearm . . . during the commission of any felony which may be prosecuted in a court of this state commits the offense of possession of a deadly weapon during the commission of a felony.
>
> . . . .
>
> (4) Possession of a deadly weapon may be proved through evidence demonstrating either actual or constructive possession of a firearm . . . during, immediately prior to, or immediately after the commission of a felony.

Actual possession is defined as including only those weapons on one's person or within one's immediate control, which is the area within which one might immediately gain possession of a weapon. *State v. Garza*, 256 Neb. 752, 592 N.W.2d 485 (1999). On the other hand, constructive possession may be proved by mere ownership, dominion, or control over contraband itself, coupled with the intent to exercise control over the same. *State v. Mucia*, 292 Neb. 1, 871 N.W.2d 221 (2015). Trew argues that at the time he sent the text messages, he was unable to gain immediate control of the weapons located in the Jeep. We disagree. Trew was in control of his vehicle in which the firearms were located, including a handgun under the driver's seat, at the time he sent the threatening text messages. After he arrived at the campground, he exited his vehicle, and was located shortly thereafter by law enforcement near his vehicle. At this point, Trew had constructive possession of the firearms in his nearby vehicle.

(c) Possession of Explosives

Trew was also convicted of one count of possessing explosives to commit a felony under Neb Rev. Stat. § 28-1222(1) (Reissue 2016), which provides:

Any person who uses an explosive material or destructive device to commit any felony which may be prosecuted in this state or who possesses an explosive during the commission of any felony which may be prosecuted in this state commits the offense of using explosives to commit a felony.

Neb. Rev. Stat. § 28-1213(4) (Reissue 2016) defines "explosive" as follows:

Explosives means any chemical compound, mixture, or device, the primary or common purpose of which is to function by explosion, including, but not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, ignited cord, igniters, 18 display fireworks as defined in section 28-1241, and firecrackers or devices containing more than one hundred thirty milligrams of explosive composition, but does not include consumer fireworks as defined in such section, gasoline, kerosene, naphtha, turpentine, benzene, acetone, ethyl ether, benzol, fixed ammunition and primers for small arms, safety fuses, or matches.

Trew argues that the pyrodex found in his vehicle did not fit within the definition of "explosive" in the statute, and further, that he did not have actual possession of the bottle of pyrodex. Again, we disagree. The record shows that pyrodex is a black powder substitute for muzzle-loading rifles, the purpose of which is to function by explosion. This clearly fits within the definition of explosive. And, similar to the possession of firearms charges discussed above, Trew had actual possession of the pyrodex when he was in control of his vehicle and sending the threatening messages, and he had constructive possession of the pyrodex shortly thereafter when he was near his vehicle in the campground.

(d) Conclusion

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to convict Trew on all counts.

2. INEFFECTIVE ASSISTANCE OF COUNSEL

Trew assigns that he received ineffective assistance of trial counsel. Specifically, Trew argues that his counsel was ineffective for failing to properly assert that his statements and possession of firearms and explosives were protected under both federal and state constitutions, and failing to assert that there was insufficient evidence to support his convictions in a motion for new trial.

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020).

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or apparent from the record, in order to preserve such claim. *Id*. Once such issues are properly raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.*

As we already addressed above, there was sufficient evidence to convict Trew of each of the charges. As such, Trew's trial counsel cannot be deemed ineffective for failing to file a motion for new trial on the basis that the evidence was insufficient. Further, as noted above, Trew's argument that his statements were protected speech fails. Clearly, Trew's possession of firearms and explosives in the commission of the felony terroristic threats charge was not protected activity. Therefore, his argument that counsel was deficient based on failure to raise this argument also fails.

### 3. EXCESSIVE SENTENCE

Trew assigns that the district court erred by sentencing Trew to an erroneous, excessive, illegal and grossly disproportionate sentence contrary to both federal and state constitutions.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Steele*, 300 Neb. 617, 915 N.W.2d 560 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* Relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances of the defendant's life. *Id*.

Under § 28-1205, possession of a firearm to commit a felony is a Class II felony punishable by a minimum of 1 year's imprisonment and maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 2016). Under § 28-311.01(1)(a), terroristic threats is a Class IIA felony punishable by a maximum of 3 years' imprisonment and 18 months' postrelease supervision, a $10,000 fine, or both. § 28-105. Under § 28-1222, using explosives to commit a felony is a Class IIA felony punishable by a maximum of 20 years' imprisonment. § 28-105.

Trew was sentenced to 2 to 3 years' imprisonment for terroristic threats, 1 to 3 years' imprisonment for each of the three counts of use of a firearm to commit a felony, all to be served consecutively, and 2 to 5 years' imprisonment for the use of an explosive device, to be served concurrently with the other charges. Here, all of the sentences imposed by the district court were within the statutory limits. Thus, we only review whether the sentences imposed by the district court constitute an abuse of discretion. We find that they do not.

The presentence investigation report reveals that Trew was 34 years old at the time of the report. Trew is a high school graduate and has been primarily self-employed for the past few years,

operating a tree removal service. Trew's criminal history includes juvenile adjudications for theft by shoplifting, unauthorized use of propelled vehicle, violate provisional operator's permit, and possession of marijuana (one ounce or less). As an adult, Trew has prior convictions of attempt of a Class IIIA or Class IV felony, disturbing the peace, failure to appear, driving under suspension (twice), minor in possession of alcohol, loaded shotgun in vehicle, and criminal trespass--second degree. After the instant charges, Trew was convicted of driving during revocation/impoundment and attempted possession of controlled substance (methamphetamine). Trew struggled with substance use in the year prior to the report, including daily methamphetamine use. Overall, the Level of Service/Case Management Inventory assessment concluded that he was at a very high risk to reoffend.

The record shows that the district court reviewed the presentence investigation report and considered the relevant sentencing factors. Based on this record, we cannot say that the district court abused its discretion in the sentences imposed.

Trew also argues that he received an excessive and illegal sentence contrary to the Eighth Amendment. The Eighth Amendment prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed. *See State v. Becker*, 304 Neb. 693, 936 N.E.2d 505 (2019). The U.S. Supreme Court has characterized this as a "narrow proportionality principle" which does not require strict proportionality between crime and sentence, but, rather, forbids only extreme sentences that are grossly disproportionate to the crime. *Id*. Eighth Amendment analysis focuses on individual sentences rather than the aggregate of sentences ordered to be served consecutively to one another. *Id*. Eighth Amendment analysis generally respects legislative determinations of statutory sentencing limits. *Id*. Trew argues that his 5-12 year total sentence is grossly disproportionate. However, upon review of the individual sentences, all fall well within statutory limits. Therefore, the sentences were not excessive and illegal under the Eighth Amendment.

## VI. CONCLUSION

For the reasons stated above, we affirm the judgment of the district court, finding the evidence sufficient to convict Trew of terroristic threats, possession of a firearm during the commission of a felony, and possession of an explosive during the commission of a felony. We also conclude that Trew did not receive ineffective assistance of counsel and that the sentences imposed by the district court were not excessive.

AFFIRMED.